UNION PACIFIC RAILWAY COMPANY, PLAINTIFF IN
ERROR, v. LYNN B. GRADDY, DEFENDANT IN ERROR.

1. **Evidence.** "Where an instrument consists partly of written
and partly of printed form, the former controls the latter, where
the two are inconsistent." Sec. 340 of the civil code.

2. **Railroads:** EMPLOYMENT OF PHYSICIAN: EVIDENCE. De-
fendant was employed by plaintiff to render such service as might
be necessary as "consulting oculist and aurist." The contract
was partly written and partly of printed form. By the printed
form the physician employed agreed "to perform all necessary
surgical and medical services for the treatment of said persons,
if required to do so, and to furnish the necessary medicines and
surgical appliances for the same." The words, "and to furnish
the necessary medicines and surgical appliances for the same,"
were erased, so that the portion of the contract which was in
writing immediately followed the words "if required to do so,"
was, "by the chief surgeon as consulting oculist and aurist,"
etc. *It was Held,* Upon a consideration of the contract, in the
light of the evidence, that the employment was only as consult-
ing oculist and aurist, and not as operating physician or sur-
geon.

3. ——: ——: ——. Upon an examination of the evidence
introduced upon the trial, *It was Held,* That plaintiff in error's
division surgeon was authorized and did employ defendant in
error to treat one of plaintiff's employees as an operating phy-
sician and surgeon.

ERROR to the district court for Douglas county. Tried
below before DOANE, J.

*J. M. Thurston, W. R. Kelly,* and *J. S. Shropshire,* for
plaintiff in error.

*A. C. Wakeley,* for defendant in error.

REESE, CH. J.

This action was instituted in the district court, by de-
fendant in error, to recover for services alleged to have
54

been rendered in the treatment of one Byron D. Bent, for a disease of the eyes known as *neuro-retinitis,* the said Bent being at that time an employe of plaintiff in error.

It was alleged in the petition that, on or about the 5th of February, 1885, plaintiff in error employed defendant in error, who was an oculist and aurist, to render certain services in his professional capacity upon the person of Bent, and for which services plaintiff in error agreed to pay defendant in error reasonable value; that the services were performed, and that their reasonable value was the sum of $150, which was not paid, and for which judgment was demanded.

Plaintiff in error, by its answer, denied the allegations of the petition, but alleged that, on or about the 7th day of April, 1884, it employed defendant in error, in his professional capacity, and that the terms of said employment were embodied in a written contract signed by the parties of that date; that it never employed him otherwise, and that he had been fully paid in accordance with the terms of said contract.

The reply of the defendant in error admits the execution of the contract, but alleges that the services rendered, and for the value of which the suit was instituted, were in no manner covered by or included within the provisions of said contract.

The cause was tried to a jury, who rendered a verdict in favor of defendant in error for the amount claimed, and upon which judgment was rendered.

Plaintiff in error now brings the cause into this court by proceedings in error.

The first objection to the judgment contained in the brief of plaintiff in error is, that the verdict is not sustained by sufficient evidence.

Ordinarily, this assignment would have been disposed of against plaintiff in error, upon the ground that the evidence upon which the case was submitted to the jury is not

all before this court.   For it appears by the bill of excep-
tions that the depositions of Byron D. Bent were read to
the jury.   Neither these depositions nor any part of Bent's
testimony being found in the record, and the presumption
being in favor of the proceedings in the district court, this
assignment could not properly be considered.   But it is
quite probable that the testimony of the witness referred to
is not essential to the disposition of the case upon this as-
signment, for the reason that the contest appears to be upon
another feature of the case.

It appears that on the 7th day of April, 1884, plaintiff
and defendant entered into a contract, the original of which
is included in the bill of exceptions, and which is part in
print and part in writing, the printed form having been
originally designed for contracts between plaintiff in error
and its physicians and surgeons.   In copying this contract,
in order that it may be fully understood, we give the
printed portion thereof in italics, as it is in the contract,
and the written portion in roman letters.   It is as follows:

"*Memorandum of Agreement.   Made and entered into
this* seventh day of April, *A.D. 1884, by and between the*
Union Pacific *Railroad Company, party of the first part,
and* Dr. L. B. Graddy, *party of the second part, both of*
Omaha, Neb.

"*Witnesseth, That in all cases* of *injury* to *employes of
the said first party and others from whom the said first party
is responsible, at* North Platte and at all points east, *the said
party of the second part, for and in consideration of the
covenants and agreements hereinafter contained, agree to
perform all necessary surgical and medical services for the
treatment of said persons, if required to do so* by the chief
surgeon as consulting oculist and aurist in any class of cases
on said  division regardless of locality of original injuries.
*The said first party agrees to give the said second party for
such services an Annual Pass over the Union Pacific Rail-
way, during the time of service, including all stations* east

of North Platte, *and to pay the actual cost at wholesale pri-*
*ces and cost of compounding medicines used, payable at the*
*expiration of treatment and discharge of the patient, and*
*subject to the approval of . the Chief Surgeon and General*
*Manager of the road.*

"*In all cases the said second party agrees to make reports*
*to the said first party as may be requested by the said first*
*party, and to use diligence and discretion in ascertaining*
*and recording all facts bearing upon the causes of accident,*
*without extra charge.*

"*No indebtedness for the road shall be incurred without*
*special permission before contracting.*

"*This agreement* will take *effect on the* seventh day of
April, *A.D. 1884, and remain in full force and effect until*
*canceled by either party giving the other thirty days' notice,*
*in writing, or for cause.*

"*Approved,*                              S. D. MURCER,
"......................         *Chief Surgeon U. P. Ry.*
      "*Chief Surgeon.*          L. B. GRADDY.
"*Approved,*
   "THOMAS L. KIMBALL,
      "*A. General Manager.*"

In the printed portion of the contract, and just before
the written words, "by the chief surgeon as consulting
oculist and aurist in any class of cases on said division re-
gardless of locality or original injury," the following words
are stricken out: "*and to furnish the necessary medicines*
*and surgical appliances for the same.*"

It appears that, during the existence of this contract,
Mr. Bent applied to defendant in error for treatment. An
examination of his eyes was made, and it was found that
they were in a very precarious condition, and that blind-
ness would inevitably result unless proper treatment was
administered without delay. After the examination, and
about the time the prescription was made out by defendant
in error, Bent informed him that he was an employe of the

plaintiff in error. Defendant in error then informed him that he could not treat him as an employe of plaintiff in error, and sent him to Dr. Galbraith, who was plaintiff's division physician, and at that time in charge at Omaha. On the same day Dr. Gailbraith gave Bent a note to defendant in error, which was as follows:

"UNION PACIFIC                    OFFICE OF
RAILWAY COMPANY,              DR. GALBRAITH,
MEDICAL DEPARTMENT.          ASS'T. SURGEON AT
                                "OMAHA, Feb. 7th, 1885.

"*Dr. Graddy:*

"DEAR SIR—As it is necessary for Mr. Bent to have immediate treatment, I would like to have you attend to him, and that the understanding shall be that it is to be done at a very moderate price. I will let you know full particulars on my return from Denver.

"Very Resp. yours,
                        "W. J. GALBRAITH."

Defendant in error then began the treatment of Bent, which was continued until a recovery was assured, the treatment lasting through a period of about three months.

The contract between plaintiff and defendant was abrogated some time prior to the termination of the treatment; but the treatment continued until the cure was affected.

The real controversy is, as to whether or not defendant in error was required to render the service by the contract. If he was, it is quite clear that he could recover nothing for services rendered prior to the termination of such contract. If not, it then becomes important to inquire whether Dr. Galbraith had authority to bind plaintiff in error by the note or letter above set out.

It is contended by defendant in error that he was employed only as consulting oculist and aurist, and that it was no part of his duty to treat cases or to perform any surgical or medical service.

It will be observed that, by that part of the contract which is in print, defendant in error agreed " to perform all necessary surgical and medical services for the treatment of said persons, if required to do so," etc.    This it is insisted is modified, or rather rendered nugatory by the written words "as consulting oculist and aurist," etc.

By section 340 of the civil code, it is provided that, " When an instrument consists partly of written and partly of printed form, the former controls the latter, where the two are inconsistent."

Webster, in his unabridged dictionary, defines the word "consulting," as " Imparting advice or information.  *Consulting physician* (Med.), a physician who consults with an attending practitioner required in cases of disease.—*Dunglison.*"

In Dr. Galbraith's cross-examination the following occurs:

Q.   You draw no distinction between the words, consulting oculist, and one actually treating cases?

A.   The only difference is, if I was to call Dr. Graddy in an eye case, I would expect him to treat it.

Q.   You would'nt expect him to treat it for two or three months as consulting oculist, would you?

A.   I don't know as I would.

Q.   Be perfectly frank; the consulting part would cover a diagnosis of the case, telling him what was the matter, and what treatment to pursue?

A.   Yes, sir.

Q.   In this case you could not have carried them out?

A.   No, sir, not without his instructions.

Accepting the words "consulting oculist and aurist" in themselves, in their usual meaning, there appears to be an inconsistency between this language of the contract and that which precedes it, and, therefore by the section above quoted, the writing must control.

Again, it appears from the evidence that the parties to

the contract construed it to mean as contended by defendant in error; for it appears that Bent's case was the only one that he was called upon to treat personally.

It is claimed by plaintiff in error that, by the latter clause of the note from Dr. Galbraith to Dr. Graddy, Dr. Graddy was informed that the chief surgeon of plaintiff in error, who at that time was Dr. Fifer, and who lived in Denver, would be consulted as to the construction of the contract, and that Dr. Graddy would be informed as to Dr. Fifer's opinion upon Galbraith's return from Denver. Upon this question there is a dispute, as Dr. Graddy testified that it had reference alone to whether he would be retained in the service of plaintiff in error. However that may be, there is no provision in the contract, or elsewhere, permitting its interpretation by the chief surgeon, or any other person, and the fact that the patient was permitted to remain under the care of the defendant in error after Dr. Galbraith returned from Denver, and even after the expiration of the contract between plaintiff and defendant, would render this inquiry immaterial.

Upon the trial the following instruction, among others, was given to the jury:

"By the terms of the contract between plaintiff and defendant, the services of the plaintiff are limited to those of a 'consulting oculist.' You are instructed that the expression 'consulting oculist' is a special, technical term, and does not include actual treatment and prescriptions given by Graddy to Mr. Bent, in curing him of the disease which Bent was suffering with. The term 'consulting oculist' would include a diagnosis of the case and advice as to the proper treatment to be pursued, or such other advice as might be required from time to time while under treatment."

The objection to this instruction seems to be based upon that clause of the contract to which reference has hereinbefore been made, requiring defendant in error to per-

form the necessary surgical and medical services for the treatment of persons placed under his care by the chief surgeon, the contention being that his business as such consulting oculist was to render such surgical and medical services as were necessary. But, as we have seen, this is not the provision of the contract, when fairly construed, and the instruction is not open to the criticism made. When performing the surgical and medical services, defendant would cease to be a consulting surgeon, and would become an operating surgeon and physician.

If we have adopted the correct theory in the construction of the contract and in the conclusion that by its terms defendant in error was not required to treat Bent as a patient, if there is any liability it must grow out of the note of February 7, 1885, written by Dr. Galbraith to Dr. Graddy.

It is shown that Dr. Galbraith was at that time the division surgeon of plaintiff in error, and had charge of the business in Omaha, the chief surgeon, Dr. Fifer, being in Denver.

At the time of the execution of the contract Dr. Mercer was the chief surgeon. He was called as a witness for defendant in error, and testified in substance that while it was desirable that all medical services should be rendered to the employes of plaintiff in error by its own physicians, yet it often did occur that such services could not be rendered by them, and that what are termed outside physicians were called in, and for their services plaintiff in error almost invariably paid.

We think it may be safely said that by the testimony of Dr. Mercer and others it was shown to be the custom of the physicians in the employ of plaintiff in error, in cases of emergency, to call to their aid physicians other than those recognized as the company's physicians.

The letter of Dr. Galbraith recognized the fact that it was "necessary for Mr. Bent to have immediate treat-

ment," and it is shown by the evidence that the case was one of emergency. There is no doubt of Dr. Galbraith's authority to employ plaintiff in error, nor of the necessity for such employment.

It appears that the charge made by defendant in error was a moderate one, the principal portion of the evidence showing that a reasonable fee in such case would be from $200 to $250.

We find no error in the judgment of the district court, and it is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.