AMERICAN SURETY COMPANY OF NEW YORK, APPELLEE, V.
SCHOOL DISTRICT NO. 64, DOUGLAS COUNTY, APPELLANT.

FILED MAY 15, 1928.   NO. 25876.

*DeLamatre & DeLamatre* and *J. C. Travis,* for appellant.

*Montgomery, Hall, Young & Johnsen, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, and EBERLY, JJ., and REDICK, District Judge.

EBERLY, J.

Action in the district court for Douglas county, Nebraska, by the American Surety Company of New York (hereinafter referred to as surety company) against School District No. 64, Douglas county (hereinafter designated school district) on an alleged covenant in writing contained in a builder's bond executed by the surety company only, which, by delivery to, alleged acceptance of, and retention by, the school district, became the obligation of the latter. This alleged covenant provides in express terms that "the obligee (school board of School District No. 64, Douglas county, Nebraska) shall retain * * * not less, however, in any event, than ten *per centum* of (the value of all work performed or materials furnished in the prosecution of such contract)." There was judgment for the surety company for the amount of its claim, and from this judgment the school district appeals.

The plaintiff, as part of its petition in the trial court, set forth copies of certain specifications in writing for the construction of the proposed school building; the written proposal or bid of one Gustafson based thereon, wherein it was stated that the "amount of the bid on the specified work" is an amount named and certain (without any further or other specifications as to times and conditions of payment) ; the acceptance of such bid in writing on May 31, 1924, by "school board of School district No. 64, Douglas county, Nebraska," and also a copy of the builder's bond (identified as exhibit D and expressly made a part of plaintiff's petition) executed in behalf of Gustafson by the surety company only. In this bond the "school board of School District No. 64, Douglas county, Nebraska," is the sole obligee named. The penalty of the bond is $10,300. It is dated June 2, 1924. It identifies the primary contract to which it is collateral and sets forth the terms and conditions thereof in the following language:

"Whereas, the principal has entered into a written contract dated *May 31st, 1924,* with the obligee, for *erection of new school building according to the plans and specifications attached,* a copy of which is hereto annexed: *Now, therefore, the condition of this obligation is such that, if the principal shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principal to faithfully perform said contract, and if the principal shall pay off and settle in full with the person or persons entitled thereto all accounts and claims that may become due by reason of laborers' or mechanics' wages, or for materials furnished or services rendered to the principal in executing or performing the obligations of said contract, so that each of such persons may receive his just dues in that behalf, then this obligation shall be void; otherwise to remain in full\force and effect.*

"Provided, however, and upon the express conditions, the performance of each of which shall be a condition precedent to any right to recovery hereon:

"First: That in the event of any default on the part of the principal, a written statement of the particular facts showing such default and the date thereof shall be delivered to the surety, by registered mail, at its office in the city of *Omaha, Nebraska,* promptly and in any event within ten (10) days after the obligee or his representative, or the architect, if any, shall learn of such default; that the surety shall have the right within thirty (30) days after the receipt of such statement to proceed, or procure others to proceed, with the performance of such contract; shall also be subrogated to all of the rights of the principal; and any and all moneys or property that may at the time of such default be due, or that thereafter may become due to the principal under said contract, shall be credited upon any claim which the obligee may then or thereafter have against the surety, and the surplus, if any, applied as the surety may direct.

"Second: That no claim, suit or action by reason of any default shall be brought against the principal or surety

after the *twenty-fifth* day of *February, 1925,* nor shall recovery be had for damages accruing after that date; that service of writ or process commencing any such suit or action shall be made on or before such date; that the principal shall be made a party to any such suit or action, and be served with process commencing the same if the principal can with reasonable diligence be found; that no judgment shall be rendered against the surety in excess of the penalty of this instrument.

"Third: That the surety shall not be liable for any damages resulting from strikes or labor difficulties, or from mobs, riots, fire, the elements, or acts of God, or for the repair or reconstruction of any work or materials damaged or destroyed by any such causes; nor for damages from injury to person, or for the death of any one; nor under or by virtue of any statutory provision for damages or compensation for injury to or for the death of any employee; nor for the nonperformance of any guaranties of the efficiency or wearing qualities of any work done or materials furnished or the maintenance thereof or repairs thereto; nor for the furnishing of any bond or obligation other than this instrument; nor for damages caused by delay in finishing such contract in excess of ten *per centum* of the penalty of this instrument.

"Fourth: That the obligee shall faithfully perform all the terms, covenants and conditions of such contract on the part of the obligee to be performed; and shall also retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or materials furnished in the prosecution of such contract (not less, however, in any event, than ten *per centum* of such value), until the complete performance by the principal of all the terms, covenants and conditions of said contract on the principal's part to be performed; that the plans and specifications mentioned in said contract are not in any respect defective, and are and at all times will be kept adequate for the complete performance of such contract, and that no change shall be made in such plans and

specifications which shall increase the amount to be paid the principal more than ten *per centum* of the penalty of this instrument, without the written consent of the surety.

"Fifth: That no right of action shall accrue upon or by reason hereof, to or for the use or benefit of any one other than the obligee herein named; and that the obligation of the surety is, and shall be construed strictly as, one of suretyship only, shall be executed by the principal before delivery, and shall not, nor shall any interest therein or right of action thereon, be assigned without the prior consent, in writing, of the surety." (Italics designate typewritten as distinguished from printed form.)

The plaintiff also alleged in substance, as the sole default of Gustafson, his failure to pay certain laborers and mechanics for labor that was performed, certain materialmen for materials actually used in erecting the school building covered by said contract, and his builder's bond, which claims for such labor and materials this plaintiff paid, and that such default constitutes the sole and ultimate basis for its claim under the terms of the alleged covenant specifically set forth in its petition.

The answer of the defendant embraced in substance (1) a general denial; (2) that the defendant and said Gustafson on or about May 31, 1924, in addition to the writing set forth in plaintiff's petition, entered into a further oral agreement whereby it was orally agreed that the "amount of the bid," as accepted by the school district, was to be paid in certain definite instalments by the school district to Gustafson at certain definite times, and that the "full balance" due on this contract was to be paid to said Gustafson when the schoolhouse to be constructed was completed by him and had been inspected and accepted by the school district; that the plaintiff was duly informed and advised of all the terms of this oral agreement prior to the execution and delivery of the bond (exhibit D), and that in due course of time the building was completed and inspected and accepted by the defendant, and the amount of the accepted bid paid and received by Gustafson; all in strict

compliance with the terms thus orally agreed upon. To the allegations of this answer the plaintiff filed a general denial by way of reply.

The record discloses that, on the trial, all evidence as to the oral agreement pleaded by defendant relating to the times of payment and amount of instalments constituting the "amount of the bid" was, on objection of the plaintiff, excluded. It was thought by the trial court to involve a violation of the parol evidence rule. But it also appears without substantial contradiction that the first paragraph of the conditions of the bond (exhibit D) was written in that instrument by the surety company at the request of the obligees, for the purpose of making the bond in this matter comply with section 3224, Comp. St. 1922; also that the entire contract price for the school building constructed was, in good faith and in strict compliance with the terms of its primary contract, paid out by the school district to persons entitled thereto. The surety company had actual knowledge of the terms of payment contained in the primary contract, and such payments were completed before these claims of laborers and mechanics and materialmen, set forth in plaintiff's petition, were paid off and taken over by the surety company.

The record also discloses that the sufficiency of pleadings of the plaintiff was challenged by proper objections seasonably lodged to the introduction of evidence and by appropriate motions at the conclusion of the evidence.

The real questions presented by this controversy, in the form in which they come before us and in the light of the record as an entirety, when reduced to constituent elements, may be said to be narrow, technical, though simple. The authenticity of all the written instruments pertaining to the transaction, as set forth in the pleadings of the parties, are, in effect, admitted. The terms of the alleged oral contract appear in the form of offer of proof. On this basis the controversy is to be determined by a proper application of the rules of evidence and a proper construction of the provisions of the several instruments in writing which ap-

pear in the record as exhibits to the several pleadings in the light of the law relating to the subject of the action.

As preliminary to the consideration of the questions suggested, we may say that, as a rule of pleading, this court for almost half a century has been committed to the doctrine that—"School districts—mere creatures of statute—possessing no powers whatever beyond those given by the legislature, they are unable to contract, *ad libitum*, as individuals may do, but only respecting objects, and to the extent, the laws permit." *School District No. 16 v. School District No. 9*, 12 Neb. 241. Therefore, a more definite statement is required than as against natural persons. Enough should be stated to show that the alleged indebtedness was one which the school district could incur. Thus: "To state a cause of action against a school district for money 'paid, laid out and expended,' for its use, and at its request, facts must be averred which show that the supposed indebtedness was such as the district could lawfully incur." *School District No. 16 v. School District No. 9, supra.* These principles remain unmodified so far as actions founded wholly on contract against school districts are concerned.

*Nebraska Telephone Co. v. City of Red Cloud*, 94 Neb. 6, reaffirms the above. It announces a modification, it is true, which was approved by a divided court, and extends only to actions "for the recovery of the reasonable market value of property received and retained."

The question as to the power of the school district to make the obligation sued upon is properly presented by general demurrer or objections to the introduction of evidence. *School District No. 16 v. School District No. 9, supra; Nebraska Telephone Co. v. City of Red Cloud, supra.*

It may also be said that exhibits attached to plaintiff's petition and "expressly made a part thereof" are subject to consideration by the court without reference to the legal effect thereof as alleged by the pleadings.

Therefore, it follows in the instant case that the allega-

tions of the pleader are controlled by the statement of the written instrument on which the pleading is founded. *Carson v. City of Hastings,* 81 Neb. 681; *Carey v. Zabel,* 112 Neb. 16.

. It would seem that the following statutory provisions are applicable to the subject of the action here presented: "Every duly organized school district shall be a body corporate and possess all the usual powers of a corporation for public purposes by the name and style of 'School District Number ........ of ................ county,' and in that name may sue and be sued, purchase, hold and sell such personal and real estate as the law allows." Comp. St. 1922, sec. 6239.

"It shall be the duty of the * * * contracting board of officers of all * * * school districts * * * now or hereafter empowered by law to enter into a contract for the erecting * * * of any public building * * * or other public structure or improvement; and any officer or officers so empowered by law to enter into such contract, to which the general provisions of the mechanics' lien laws do not apply, and where the mechanics and laborers have no lien to secure the payment of their wages and materialmen who furnish material for said work have no lien to secure payment for material furnished in said work, to take from the person, persons, firm or corporation to whom 'the contract is awarded a bond in a sum not less than the contract price with at least two good and sufficient sureties, or in lieu thereof by one surety company, conditioned for the payment of all laborers and mechanics for labor that shall be performed and for the payment for material which is actually used in the erecting, furnishing, or repairing of the building or in performing the contract. Such bond shall be to the board awarding the contract, and no contract shall be entered into by such board until the bond herein provided for has been filed with and approved by said board. Such bond shall be safely kept by the board making the contract, and may be sued on by any person entitled to the benefit of this chapter. The action shall be in the name of the

party claiming the benefit of this chapter." Comp. St. 1922, sec. 3224.

The nature of the transaction here presented obviously requires the application of the following rule of construction: "Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge of the meaning of the words and of the correct application of the language to the things described." *Nash v. Towne,* 5 Wall. (U. S.) 689. See, also, *Nebraska Hardware Co. v. Humphrey Hardware Co.,* 81 Neb. 693.

Logically, in the application of the principle of construction just announced, the first question suggested is: What effect did the secondary contract (exhibit D) have on the primary contract between the school district and Gustafson? Did its execution and delivery, as a secondary obligation, subscribed by the surety company only, and its acceptance and retention by the school district or by the school district board operate, by necessary implication, to incorporate in the primary contract between the school district and Gustafson of prior date the covenants and obligations of exhibit D as the controlling provisions thereof?

In principle, a similar question was determined in *Milske v. Steiner Mantel Co.,* 103 Md. 235, 115 Am. St. Rep. 354. The primary contract in this case cited was an unconditional builder's contract for the erection and completion of a building for a price definite and to be paid as therein set forth. It also contained a stipulation that the contractor awarding the contract should, with some responsible bonding company, execute a bond to the employer "conditioned for the faithful performance of his duties in the erection of the building." This stipulation was complied with by the contractor as principal, together with the American

Surety Company of New York as surety, each signing and executing a bond which, after its third condition, provided "that the principal (the contractor) shall not, nor shall the surety be liable for any damage resulting from an act of God." This bond was accepted and retained by the obligee. In an action founded on this quoted provision brought by the contractor against his employer who was the obligee of the bond, it was contended that this condition must be read into and considered as a part of the primary contract for the construction of the building; that it was, in fact, a binding covenant imposed upon the obligee who had accepted and retained the bond in which it appeared and of which it formed a part; and that, therefore, the obligee was bound as for a covenant that he had duly entered into. The trial court, however, denied recovery. The supreme court of Maryland sustained this determination. In its opinion, after setting forth the terms of the primary contract for the construction of the building as entered into between the employer and contractor, that court proceeds:

"These are the main and substantial provisions of the contract. It is an absolute and unconditional contract on the part of the plaintiff. There are no conditions or contingencies incorporated or provided for therein by which he might be excused from performance, or might be relieved from loss or damage, or whereby the loss occasioned by the storm mentioned in the declaration might be imposed upon the defendant. The bond was given, not to vary or change in any particular the obligations of the plaintiff under the contract, but to secure the faithful performance by him of all the duties assumed by him thereunder. Its object was to protect the defendant from loss or damage which might result from nonperformance by the plaintiff, and cannot be construed to add to or change any of the terms of the contract, or to be taken as a part thereof. When the purpose of the contract, its subject-matter, and the surrounding circumstances at the time are considered, it would seem to be perfectly clear that the

bond is an entirely independent and collateral contract given to protect the defendant against any default or miscarriage of the plaintiff under the contract. The original obligation to construct the building had been undertaken by the plaintiff, and the bond must be treated as a contract of guaranty or suretyship for the faithful discharge of his duties under his agreement with the defendant. That the original and distinct obligation of the plaintiff existed, and that the bond was a mere collateral agreement founded upon it, appears clear from the language employed and from a consideration of the surrounding circumstances. The bond may, therefore, be dismissed from the case and should not have been introduced into the declaration."

It follows that, as applied to the present case, the foregoing decision is authority for the conclusion that the terms of exhibit D, the secondary agreement by the surety company, cannot be read into the primary contract of the school district with the contractor or, in any manner or to any degree, affect the same. The full obligations of the latter, imposed by its terms on the respective parties thereto, remain and continue in full force and effect.

We are thus restricted to the terms of the secondary contract (exhibit D) as the exclusive basis of plaintiff's recovery in this case. Under the rule of construction as heretofore announced, we will look to the language employed in that instrument, the subject-matter to which it relates (especially so far as involved in this action) and the surrounding circumstances. In other words, this court will endeavor to place itself in the same situation as the parties who made this contract, so as to view the circumstances as they viewed them, and so judge the meaning of the words and the correct application of the language employed. For this purpose the terms of the primary contract between the school district and Gustafson, including both the written part thereof, as the same appears in the exhibits heretofore referred to, and the oral part thereof as shown by offers of proof which were excluded by the

trial court on the theory that the transaction then presented properly necessitated the application of the parol evidence rule, are important, and they constitute a part, at least, of "surrounding circumstances." These excluded offers of proof disclose an attempt to establish the terms of an executed and consummated contract after full performance in strict accord with all of its terms both parol and written, but also fairly disclose that, at the time of originally entering into the same, the parties thereto, contemporaneous with the making and subscribing thereof and in addition to the written terms, orally agreed on certain parol stipulations, additional to, but wholly consistent with, the written language employed, and which served only to supply obvious omission in the written language of their agreement. *Spiegal & Son v. Alpirn,* 107 Neb. 233; *Weddle v. Specht,* 97 Neb. 693; *Huffman v. Ellis,* 52 Neb. 688.

If we assume (but do not decide) that the circumstances detailed in these offers of proof properly invoke the consideration by the district court of the so-called parol evidence rule, still we cannot approve the action of that court in excluding the evidence offered. The objecting party was not a party to this primary contract. His action was not based upon it. The primary contract sought to be proved was but collaterally involved in the pending litigation then being tried.

This court is thoroughly committed to the doctrine that the rule excluding parol evidence to vary a written instrument has no application in a controversy between a party to such instrument on the one hand and a stranger to it on the other. 22 C. J. 1292; *Stanton Nat. Bank v. Swallow,* 113 Neb. 336; *De Laval Separator Co. v. Jelinek,* 77 Neb. 192; *Fairbanks, Morse & Co. v. Burgert,* 81 Neb. 465; *Fletcher v. Brewer,* 88 Neb. 196; *Rankin v. Northern Assurance Co.,* 98 Neb. 172; *Hauth v. Sambo,* 100 Neb. 160; *Durland Trust Co. v. Payne,* 106 Neb. 135; 10 R. C. L. 1019, sec. 212; *Bjornson v. Rostad,* 30 S. Dak. 40; *Vogt v. Schienebeck,* 122 Wis. 491.

It follows that in sustaining the objection to this evidence

the district court committed reversible error.

In view of the conclusion that the plaintiff is limited, as the basis of its recovery, to the builder's bond (exhibit D) we find it unnecessary to discuss at length the proposition of the surety company that, upon payments of the material-man for materials used in the construction of the building, it acquired an equitable right of subrogation against the school district even in the absence of statutory subrogation.

Subrogation is the substitution of another person in the place of a creditor so that the person in whose favor it is exercised succeeds to the rights of a creditor in relation to the defendant, but such subrogee can acquire no greater right than the creditor had to whose right he succeeds at the time of such payment by him.

The undisputed facts are that, prior to the payment by the surety company of any claim for materials furnished in this case by the materialmen in strict compliance with the actual terms of the primary contract, the contractor had been paid in full by the school district. The material-men involved sustained no contractual relations with the school district whatever. It is not even claimed that the school district failed to perform any statutory duties it owed them. The contractor's right to compensation having wholly ceased and determined, he possessed no rights which, under any circumstances, might inure to the benefit of his creditors. Where the creditors themselves have no rights, there is nothing to which the subrogee can be sub-rogated; hence, the plaintiff herein can, under the facts in this case, acquire nothing through the application of that equitable principle.

The original builder's bond was executed by the surety company and accepted by the school district with the avowed intent and purpose and effort on part of both that the same should be in full accord and complete compliance with section 3224, Comp. St. 1922. In its preparation we note that a blank form was used, evidently not intended for the purpose for which it was employed, and the first par-agraph of the conditions is in typewriting, complete within

itself, and substantially complies with the provisions of the statute referred to, and the language in which it is framed carried a sense of exclusion or completeness. The remaining terms and conditions, as shown by the copy appearing in this opinion, are wholly contained in fine print of the form employed. The subject-matter to which this construction is to be applied in the controversy before us is solely and exclusively wages of laborers and mechanics and for materials furnished by materialmen in the construction of the building.

The conclusion is inevitable that the instrument before us is a statutory bond and must be construed as such with reference to subject-matter completely embraced in the statute providing for its existence.

The character of the instrument, and the subject-matter to which it applies, renders the following principles important in its construction: "When an instrument consists partly of written and partly of printed form, the former controls the latter, where the two are inconsistent." Comp. St. 1922, sec. 8850; *Union P. R. Co. v. Graddy,* 25 Neb. 849; *Davis v. Ravenna Creamery Co.,* 48 Neb. 471. Statutes, with reference to which contracts are made and entered into, become part of the contract. *Watkins & Co. v. Kobiela,* 84 Neb. 422; *Sessions v. Irwin,* 8 Neb. 5.

"Where a bond contains the conditions prescribed by statute and also contains conditions in excess of those so required, if the excess can be separated from the authorized portion without destroying the latter, it may be rejected as surplusage, and the rest of the bond held valid, in the absence of a statutory provision expressly or by implication making it void, unless the language of the bond precludes a construction giving it validity." 9 C. J. 25, sec. 40.

Also: "The prevailing doctrine is that where the conditions of a statutory bond are separable and part are authorized by statute and part not authorized or even prohibited, and the statute does not expressly, or by necessary implication, declare it void as a whole, the conditions not authorized or prohibited may be rejected as surplusage, and

the residue sustained as a good statutory bond *pro tanto,* the rule being the same as that applied to common-law bonds partly good and partly bad." 4 R. C. L. 54, sec. 14.

"It has been frequently held that, in the absence of a prescribed statutory form, and of a declaration that bonds not in accordance therewith shall be void, if a bond be taken under a statute, with a condition in part prescribed by statute, and in part not so prescribed, yet, if it be clearly divisible, a recovery may be had upon it for a breach of the part prescribed by statute. The super-added part may be rejected as surplusage." *Board of Education v. Grant,* 107 *Mich.* 151. See, also, *Van Deusen v. Hayward,* 17 Wend. (N. Y.) 67; *Walker v. Chapman,* 22 Ala. 116; *Shunk v. Miller,* 5 Pa. St. 250; *Grant & Finney v. Brotherton's Adm'r,* 7 Mo. 458; *Morse v. Hodsdon,* 5 Mass. *314; *State v. McGuire,* 46 W. Va. 328; *Welch v. Sykes,* 3 Gil. (Ill.) 197, 44 Am. Dec. 689; *People v. Hartley.* 21 Cal. 585, 82 Am. Dec. 758.

The language employed in expressing the first condition of this bond (exhibit D) is wholly typewritten. So far as the subject-matter of our investigation is concerned it clearly appears therein that this instrument is conditioned for the payment of all laborers and mechanics for labor that shall be performed, and for the payment of all materials used in erecting said schoolhouse or in performing the contract for the same. That no other terms or conditions are within the contemplation of the parties plainly appears from the closing words of this typewritten statement, viz.: That upon the full performance of such condition, "then this obligation shall be void; otherwise to remain in full force and effect." This "obligation" in this connection is properly definable as "the binding power of this contract." *Edwards v. Kearzey,* 96 U. S. 595.

Read the bond as an entirety and contrast the typewritten portion with the portion of the same appearing in the fine print of the blank employed and you have an instrument without material consistency or coherence of parts. The typewritten portion cannot stand if the fine print be

given effect. The two parts are, therefore, inconsistent. Under the provisions of the sections of the statutes referred to, the typewritten condition, exclusive in its expression, controls, and by construction eliminates the "fine print" portion as part of the contract. This construction, however, is not only the result of the application of a technical rule, but is the only one consistent with the surrounding circumstances and the situation of the parties at the time of the execution and delivery of the bond. The school district was, by the terms of the primary contract, then obligated to pay its contractor the entire balance due when the school building was completed, inspected and accepted. This contract was valid, complete and enforceable. For the school district to attempt to retain any portion of the sum thus contracted to be paid would be, in effect, a plain violation of its contract and subject it to damages.

The surety company knew the provisions of this contract and the situation that existed, and with this knowledge undertook to supply a bond for the purpose of complying with section 3224, Comp. St. 1922, and which would apply to that situation. For the purpose stated, it executed the bond in suit. In its typewritten provisions, this bond is entirely consistent with the primary obligation of the school district and correctly conforms to the situation of the parties to the primary contract, but its "fine print" form is wholly inconsistent with the typewritten portion thereof, and is a violation of its undertaking to furnish a bond applying to the true situation, and it fails in compliance with the statute referred to.

Can it be possible that, for a compensation in dollars, the surety company, plaintiff herein, has, knowingly, placed the school district in such a position that a good faith performance of its primary contract necessarily entails a breach of the terms of its secondary obligation with resulting damages, and that a good faith performance of the secondary obligation necessarily entails a breach of the primary contract? Such a supposition is unthinkable and wholly inconsistant with good faith and fair dealing. The acts of

all the parties to a transaction are entitled to a construction consistent with fair purpose and honest dealing.

But another incongruity appears. Plaintiff's sole contractual basis for its cause of action, a search discloses, is to be found safely tucked away as an inseparably connected part of the fourth paragraph of the "fine print" form employed. It assumes that the term "obligee," used in connection therewith, designated the school district, and therefore the school district is bound as for a "covenant" entered into. We concede only for the purpose of this discussion that the term "obligee," as thus used, identifies the corporate entity here sued. The ordinary rules of construction would necessitate construing the paragraph in which the words affording plaintiff the basis of its claim are found as an entirety. Individual sentences, individual clauses, and particular words, must be construed in connection with context.

As applied to the subject-matter, the surrounding circumstances which constitute the facts in the present case, this consideration of this "fine print" paragraph brings us to the following results: "Provided, however, and upon the express conditions, the performance of each of which shall be a condition precedent to any right to recovery hereon: * * * Fourth: That the obligee (school board of school district) shall faithfully perform all the terms, covenants and conditions of such contract (the primary contract between the school district and contractor Gustafson) on the part of the obligee to be performed (which necessarily includes payment by the obligee of the contract price as therein provided) ; and shall also retain that proportion, if any, which such contract specifies the obligee shall or may retain of the value of all work performed or materials, furnished in the prosecution of such contract (not less, however, in any event, than ten *per centum* of such value), until the complete performance by the principal of all the terms, covenants and conditions of said contract on the principal's part to be performed."

If the obligation on part of the obligee, imposed by the

words of the contract as above set forth, to retain "ten *per centum* of the value*,*" is to be deemed a covenant, then the obligation imposed by the same paragraph upon the same obligee to faithfully perform all the terms and covenants of such primary contract must also be deemed a covenant. The latter is first in point of time. Applied to the facts in the instant case, the first covenant necessarily and imperatively directs the payment of the balance due, as provided by the terms of the primary obligation, which, in this case, is upon the completion of the building and its acceptance by the school district board. The second covenant, in effect, requires the breaching of covenant No. 1 to pay, and expressly requires that a portion of the purchase price, equivalent to the ten *per centum* of the value of all work done and the materials furnished, be not paid as such primary contract requires. Obviously, the "obligee" cannot be legally bound by the same contract and by the same clause of the contract at the same time to pay and not to pay. These clauses are therefore inescapably inconsistent and mutually repugnant. They cannot stand together. Covenant No. 1 is strictly in accord with the primary contract. Covenant No. 2 is repugnant to its terms.

The rule applicable is: "Where two clauses are so repugnant that they cannot stand together, the first will be retained and the second rejected, unless the inconsistency is so great as to avoid the instrument for uncertainty, and this rule is the more readily applied where the instrument is apparently carelessly drawn, or where the conflicting clause is on the back of the contract." 13 C. J. 536, sec. 493.

Whether we reject the second covenant or deem the instrument avoided for uncertainty, the same result ensues. The plaintiff's action is without support in either event.

And the same construction obtains for another reason. The obligation is a statutory bond entered into, as such, by the surety company, and is entitled to no other construction than that the parties gave it when it was entered into.

The terms and conditions, as expressed in the typewritten portion, are not only separable from the terms embodied in the fine print of the form employed in drafting the same, but are, in themselves, a substantial and complete compliance with the terms and requirements of section 3224, Comp. St. 1922. The "fine print of the form," embracing the portion of the bond on which plaintiff must rely to sustain his action, is not only wholly unauthorized by our statute, but in many respects repugnant thereto. In view of the rule announced by the authorities heretofore cited, the provisions embraced in the "fine print" of the form must, being in excess of the controlling statute and wholly unauthorized thereby, therefore, be deemed to be surplusage and to be rejected as such.

It, therefore, follows that in legal effect the entire contract of the parties in the present case is evidenced by that portion of the bond which excludes the "fine print" provisions which appear as part of the form, but which constitute no part of the legal obligation which the bond evidences.

Still, another reason exists for denying recovery on the basis of the allegations contained in plaintiff's petition filed herein. It must be conceded that, in the absence of statute, no legal duty was imposed on public or municipal corporations or officers representing the same to exact bonds such as the one here in suit. It also follows that, in the absence of statute, there was no corresponding liability for simple failure so to do. It may be said, however, that the question of the exaction of such bonds, as a matter of public policy, received judicial consideration long prior to the adoption of the statute now in force on that subject, as will be seen from the following decisions: *Sample & Son v. Hale,* 34 Neb. 220; *Lyman v. City of Lincoln,* 38 Neb. 794; *Korsmeyer Plumbing & Heating Co. v. McClay,* 43 Neb. 649; *Fitzgerald v. McClay,* 47 Neb. 816; *Kaufmann v. Cooper,* 46 Neb. 644; *King & Co. v. Murphy,* 49 Neb. 670; *Rohman v. Gaiser,* 53 Neb. 474.

As a summary of the doctrine of the cases just cited that

obtained prior to the passage of section 3224, Comp. St. 1922, it may be said (1) that the requirement of a bond proceeds on the basis that a "moral" as distinguished from a "legal" obligation existed, and therefore the exaction of a bond for the benefit of the laborers and materialmen could be sustained as not in excess of the power of the officers representing the corporation involved in the matter of constructing a public building; (2) apart from statutory authority, it was within the province of the proper officers of a public or municipal corporation, upon whom it devolved to enter into construction contracts, to exact as a condition precedent thereto the giving of a bond by the contractor employed, conditioned for the payment of all laborers and mechanics for labor that should be performed thereon, and for the payment of all building materials which were actually used in performance of the contract so entered into; (3) that the sureties on such bond were liable in a direct action by the parties for whose benefit it was given; (4) that, notwithstanding the form of the obligation taken, in view of the obligation it contained, it was a contract dual in its nature; that it was two contracts, separate and distinct though embodied in one writing; (5) that the case stood exactly as if the contractor and his bondsmen had entered into one direct obligation with laborers, mechanics and materialmen, and one with the district; (6) that the officers of corporate entities, so far as securing the bond for the payment of laborers and materialmen, acted not in their own behalf, but in the capacity of trustees for the beneficiaries protected by the bond. The fundamental basis on which these decisions rest is the nonexistence of statutory powers to contract with reference to the subject-matter in behalf of, or as binding upon, the public corporate entity involved.

Thus, where the stipulation in the construction contract was that the contractor should receive but 45 per cent. of the estimated cost of the work actually performed by him, and that such work should be performed by a day certain, and the payment of 90 per cent. had been paid, and the time

of the completion of the work had been extended, all without consent of the sureties on the bond, such facts, it was held, constitute no defense to actions prosecuted by laborers and materialmen upon the bond because the stipulation relied on as a defense formed no part of the obligation sued upon. This situation has been followed by the legislative adoption of section 3224, Comp. St. 1922.

"When the legislature declares * * * the public policy of the state to be that that which had theretofore been subject to contract between the parties shall hereafter be by certain prescribed forms and with specific conditions concerning the respective rights and duties of the parties thereto, the statutory provisions step in and control and regulate the mutual rights and obligations rather than the provisions of any contract the parties may attempt to make varying therefrom." *Williams v. Travelers Ins. Co.,* 168 Wis. 456.

The terms of section 3224, Comp. St. 1922, impose the duty of taking a bond upon "the contracting board of officers of all school districts." The terms provide that the instrument itself "shall be to the board awarding the contract," and "shall be safely kept by the board, * * * and may be sued on by any person entitled to its benefit." This statute vests no added power in the corporate entity, the school district as such, and imposes no additional duties upon it, and in no manner adds to its liability; in fact, the school district as such is a stranger to its terms and is not in any manner within the purview of its provisions.

This court is further committed to the doctrine that, so far as the members of the board of a school district act, under this statute, in exacting a bond for the benefit of laborers, mechanics and materialmen, they exercise statutory powers exclusively vested upon them as trustees for beneficiaries to be protected thereby. *Forburger Stone Co. v. Lion Bonding & Surety Co.,* 103 Neb. 202. The school board does not act for, or in behalf of, the school district of which they are officers, in accepting, taking and keeping this statutory bond.

From the allegations of the petition here, it appears that the plaintiff, as foundation of alleged contractual rights, pleads the bond expressly given to comply with section 3224, Comp. St. 1922, with the obligee thereof designated as "School board of School District No. 64, Douglas county, Nebraska," and it presents a literal compliance with the terms of the statute. But the term "School board of School District No. 64, Douglas county, Nebraska," as therein used, designates, not officials acting in behalf of their school district, but trustees acting in behalf of the laborers, mechanics and materialmen who are to be the beneficiaries of the bond taken.

Therefore, if it be conceded that the words we find in the fine print of the bond, "The obligee * * * shall also retain * * * not less, however, in any event, than ten *per centum* of such value (of all work performed or materials furnished in the prosecution of such contract)," until the complete performance of all terms and covenants in the principal part to be performed, is properly a part of the bond and is to be construed as a covenant, even so, it cannot be said that it constitutes the covenant of the school district which is not named in the bond, and is not a party thereto or interested therein, which, so far as plaintiff's cause of action is concerned, has therefore no contractual liabilities. In short, the terms of the bond do not, in view of the basis of plaintiff's claim being laborers', mechanics' and materialmen's demands and the terms of the statute, impose any duty or liability upon the school district as such. If the obligee in the bond named be deemed the promisor, the obligee is not sued in the action we are now considering. What the obligee's rights and liabilities may be, they are therefore not before us for determination.

While the conclusions heretofore announced on some of the questions considered would necessitate a reversal for retrial, we are confident, in view of the entire record, however, that there is no cause of action stated, or can be stated, upon the bond in suit against the corporate entity, School District No. 64, Douglas county.

. It follows, therefore, that the evidence wholly fails to support the judgment of the district court. The judgment is reversed and the proceedings dismissed.

REVERSED AND DISMISSED.