## RALEIGH *v.* TOSSETTEL.

PLEADING.—*Sham Answers.*—*Interrogatories.*—The court cannot examine the answers to interrogatories to determine whether an answer is a sham pleading or not.

CONTRACT FOR BUILDING.—*Material-Men.*—Where A. contracted for the building of a house and its delivery to him free from all liens of material-men, and took a bond to that effect from B., with sureties, and B., after partly erecting the building, abandoned his contract, being indebted to A. for over payment, and assigned the contract to C., one of his sureties, who completed the building;

*Held,* that A. was not rendered liable to one who had furnished materials to the building, by reason of a notice of such fact served upon him after he had thus overpaid B.

APPEAL from the Vanderburg Circuit Court.

BUSKIRK, J.—An opinion in this cause was filed with the clerk of this court, on the third judicial day of November term, 1871, reversing the judgment of the court below; but such opinion was lost before it was certified to the court below or entered upon the judgment docket, which imposes upon us the necessity and labor of writing another opinion.

This action was brought by the appellee against Richard Raleigh, Crist, and Linxwiler. The complaint, as amended, is in two paragraphs. The first paragraph is, in substance, as follows:

On the 30th of September, 1867, Raleigh employed Crist and Linxwiler, partners under the firm name of Thomas Crist & Co., to furnish the materials and build him a house. The contract was reduced to writing, and is made an exhibit. On the 27th of December, 1867, under the contract, Crist & Co. had inclosed the building and done other work thereupon, and Raleigh was indebted to them at that time, in the sum of one thousand dollars. Between the 30th of September and the 27th of December, 1867, the appellee, at the instance of Crist & Co., had furnished and delivered one hundred and seventy-five thousand bricks, which were used in the erection of the house. The bricks were furnished in

conformity with the contract between Raleigh and Crist & Co. The appellee was to have received, on the 1st day of November, 1867, six dollars and seventy-five cents per thousand for the bricks, only four hundred dollars of which had been paid, leaving a balance due and unpaid of seven hundred and eighty-one dollars and twenty-five cents. In addition to the one thousand dollars, Raleigh, on the 27th of December, 1867, still held the title to a tract of land of forty acres, valued at three thousand dollars, which Crist & Co. were to take in part payment for the building of the house. On the 21st of December, 1867, the appellee served upon Raleigh notice, in writing, that he would hold him responsible for the balance on the bricks, etc. The notice is made an exhibit. Prayer for judgment, etc.

The second paragraph contains substantially the same as the first, with the following additional averments: Raleigh was to pay Crist & Co. ten thousand dollars for the erection and completion of the house, seven thousand dollars to be paid in seven equal instalments of one thousand each as the work progressed, and three thousand in a tract of land containing forty acres, which was to be conveyed by deed upon the completion of the building. On the same day, and at the time of the making of the contract between Raleigh and Crist & Co., the latter, together with John F. Glover, J. W. Kegan, and Jacob H. Miller as sureties, executed to Raleigh their bond in the sum of six thousand dollars, the conditions of which were that Crist & Co. should well and faithfully erect and complete the building according to the plans and specifications of H. Mursina, architect, and deliver the same to Raleigh, clear from all liens, incumbrances of any and all material-men, sub-contractors, employees, and all other persons whomsoever. The bond is made an exhibit. On the 21st of December, 1867, Raleigh was indebted to Crist & Co., on the contract, in the sum of eight hundred dollars, besides the forty acre tract of land. On that day the appellee served on Raleigh a notice in writing, setting forth the indebtedness of seven hundred and

eighty-one dollars and twenty-five cents for the bricks with which Raleigh's house had been built, and that he would hold him responsible for the payment of the same. Prayer for judgment.

Crist and Linxwiler made default, and Raleigh answered in one paragraph. The answer is, in substance, as follows:

At the time the notice was given to Raleigh, Crist & Co., for want of means or credit to enable them to prosecute their contract for the building of the house, closed the building up and abandoned it. At that time Raleigh had paid Crist & Co. six thousand dollars, which was more than was due to them under the contract; that John F. Glover, who was the surety for Crist & Co. for the fulfilment of the contract for the building of the house, with the assent of Raleigh, took an assignment of the contract, took possession of the building, and in good faith, with his own means, completed the contract. The cost and reasonable value of labor and materials required to complete the building, which was done and finished by Glover, was more than one thousand dollars added to the value of the forty acres of land, to wit: more than four thousand dollars; that Glover took the assignment immediately after the service of the notice on Raleigh, and before anything had become due to Crist & Co., after the service of the notice and after the abandonment by Crist & Co. Glover, after the service of the notice, and after the assignment, with his own means completed the house. Raleigh paid the unpaid one thousand dollars to Glover, and conveyed to him the forty acres of land.

The plaintiff moved the court to strike out the answer of Raleigh, as being a sham answer; and in support of the motion read the interrogatories filed with the complaint, and the answers of Raleigh thereto.

Among the interrogatories and answers thereto are the following:

Interrogatory 6. "How long did the defendant, Thomas Crist, continue to work on said building after you received said notice from the plaintiff?"

Answer to 6. "Said Crist closed the house about the 1st of January, 1868, as stated above, and did not afterward have control of the job, as I understood the matter. Thomas Crist worked afterward at the carpenter and joiner work of the house, as I understood from the parties and believe to be true; he worked under the direction and control of Glover after January aforesaid."

Interrogatory 8. "How much money did you pay out, and to whom did you pay it, to have the materials furnished and the work and labor done, which ought to have been done by the contractors after Crist ceased to work?"

Answer to 8. In answer to the eighth interrogatory, said respondent says, "that he paid out upon said contract, after said Crist ceased to carry on the building of said house, the sum of one thousand and sixty-three dollars and ninety-nine cents; I paid it to John F. Glover, as I was informed and believed, who had taken an assignment of the contract from Crist for building the house, and who completed the building after Crist stopped for want of means or credit to finish the job, his men refusing to work for him, because they would not trust him."

Interrogatory 9. "How did you finish said building after the defendant, Crist, ceased work? Did you let it out on contract, and if yea, to whom did you let, and how much did you pay?"

In answer to the ninth interrogatory, respondent says: "I had nothing to do with completing the contract, except to pay for it. Glover, being the surety of Crist for the performance of the contract for building the house, took charge of the building and carried it out, and I paid him the unpaid money when he took charge of the same, as stated in answer to the eighth interrogatory."

Interrogatory 12. "What have you done with the three thousand dollar tract of land described in the contract, which was to have been conveyed on the completion of said building?"

Answer to 12. In answer to said twelfth interrogatory,

respondent says: "Said tract of land was conveyed to John F. Glover, represented to me to be the assignee of the contract for said building, upon the completion of said contract. Said conveyance was made to said Glover by direction of Crist, who, as well as Glover, represented that Glover had an assignment of said contract, and was entitled to said conveyance for work and materials done and furnished upon said house."

Interrogatory 14. "Did you not, after you received said notice, give up said contract for completion to John F. Glover, one of the sureties on the bond of Thomas Crist & Co.? If yea, on what terms did you let him take it, and how much have you paid him on that account?"

Answer to 14. In answer to the fourteenth interrogatory respondent says: "He had no contract with Glover, except as the surety of Crist upon a bond given to secure the performance of the original contract. When Crist became unable to carry out the contract, Glover took it up and carried it out, and I paid him."

Interrogatory 16. "Did you not suffer Glover, by reason of an arrangement between him and the defendant Crist, to go on and finish the house without your having anything to do with their arrangement?"

Answer to 16. In answer to the sixteenth interrogatory respondent says: "I did."

The court overruled the motion to strike out, and the plaintiff excepted. The plaintiff then demurred to the answer, and the court sustained the demurrer, and Raleigh excepted, failed to answer, and stood upon the demurrer. The plaintiff proved his damages, and took a joint judgment against all the defendants for the balance due, to which Raleigh excepted.

The appellee has assigned as a cross error the overruling of his motion to strike out the answer of Raleigh. Did the court err in overruling the motion to strike out the answer? We are of the opinion that the ruling of the court was correct. There is nothing upon the face of the answer to show

that it was a sham pleading, and it has been several times decided by this court, that the lower courts cannot examine interrogatories filed in a cause, to determine whether a pleading was sham.

The appellant has assigned for error the sustaining of the demurrer to his answer. Do the facts stated in the answer constitute a defense to the action?

This was a proceeding under section 649 of the code, as amended by the act of March 11th, 1867. 3 Ind. Stat. 335. The object of the action was to enforce a personal liability against Raleigh. The facts were these: Raleigh contracted with Crist, Linxwiler & Co., to construct a house for him. Glover, Kegan, and Miller became the sureties of Crist & Co., in a bond to Raleigh, conditioned that Crist & Co. should well and faithfully erect and complete the building according to the plans and specifications of H. Mursina, architect, and deliver the same to Raleigh, clear from all liens, incumbrances of any and all material-men, sub-contractors, employees, and all other persons whatever.

Crist & Co. partially performed their contract, but did not complete the house. They abandoned the contract and ceased to work. They assigned the contract to Glover, who was one of their sureties on the bond, and he completed the house. The appellee, under a contract with Crist & Co., furnished materials that were used by them in the construction of the said house. The appellee served notice on Raleigh, that he held him personally liable for the value of the materials so furnished. This action was to enforce such personal liability. Under section 649, Raleigh was liable to the appellee to the amount that was due from him to Crist & Co., at the time when such notice was served upon him, and for such sum as might thereafter be due from him to them. It is alleged in the answer that when the appellee served the notice on him, he had overpaid Crist & Co. If this allegation was true, and the demurrer admitted it was true, Raleigh was not indebted to Crist & Co., at the time

Raleigh *v.* Tossettel.

the notice was served, and consequently was not liable to the appellee.

But it is earnestly, and with great ability, maintained by the learned counsel for the appellee, that, upon the facts stated in the answer, Raleigh became indebted to Crist & Co., after he had received notice that the appellee intended to hold him responsible for the amount· that was due to him from Crist & Co., for materials furnished. We think otherwise. The contract between Raleigh and Crist & Co., was assignable under our statute. See sec. 1, of Act of March 11th, 1861, 2 G. & H. 658. It is alleged in the answer that Crist & Co. assigned the contract to Glover, who took possession of the building, and in good faith, and with his own means, completed the contract, and received from Raleigh payment for the work done by him after such assignment. The contract was assignable. We are bound to presume that the assignment was made in good faith. When the contract was assigned, Crist & Co. ceased to have any interest therein. By the assignment of the contract, Glover was substituted to their rights, and was clearly entitled to demand and receive from Raleigh payment for the value of the work done and materials furnished by him subsequent to such assignment. We are unable to see upon what principle it can be maintained that Raleigh became indebted to Crist & Co., subsequent to the assignment of the contract.

It is true, that upon the failure of Crist & Co. to perform the contract, Raleigh might have elected to regard the contract as rescinded, and might have employed some third person to complete the building, and might have sued upon the bond that was given him, but he was not bound to do so.

But it is also maintained by the appellee, that Raleigh is liable to him, because he holds the bond of Crist & Co., with Glover *et al.* as his sureties, with the conditions hereinbefore set out. This is not an action upon the bond, and consequently we are not required to determine whether the appellee has the right to resort to such bond, and as to such point we decide nothing. This is not a proceeding to enforce

a mechanic's lien. It is an action to enforce a personal lia-
bility against the appellant. We are of the opinion that it
sufficiently appears from the answer, that Raleigh was not
indebted to Crist & Co. at the time he received the notice,
and that he did not thereafter become indebted to them.

We think the answer was good, and that the court erred
in sustaining the demurrer to it.

The judgment is reversed, with costs, and the cause is re-
manded, with directions to the court below to overrule the
demurrer to the answer, and for further proceedings in
accordance with this opinion.

*A. Iglehart* and *J. E. Iglehart*, for appellant.
*J. M. Shackelford* and *W. F. Parrett*, for appellee.