NASH ENGINEERING COMPANY *v.* MARCY REALTY CORPORATION, INC., ET AL.

WARREN WEBSTER & COMPANY *v.* MARCY REALTY CORPORATION, INC., ET AL.

PHILIP CAREY COMPANY *v.* CARSON ET AL.

[No. 27,977.   Filed April 18, 1944.]

*Walter Myers, Jr.,* and *Obed T. Kilgore,* both of Indianapolis, for appellants.

*James E. Deery,* and *Kivett, Chambers & Kivett,* all of Indianapolis, for appellees.

RICHMAN, J.—Marcy Realty Corporation, Inc., the owner of real estate in Indianapolis, entered into a contract with Everett A. Carson for the construction of apartment buildings known as the Marcy Village Housing Project. The contract provided against liens and was recorded in compliance with § 43-701, Burns' 1933. With Seaboard Surety Company, as surety, Carson executed a bond to secure performance of the contract. Fred W. Fenneman was subcontractor for the plumbing and heating. Each of the appellants sold Fenneman material used in the building. Indiana Heating & Plumbing Company, Inc., was incorporated by Fenneman to do the work required of him under his subcontract. Fenneman did not pay appellants in full. While the owner was still indebted to the contractor in a sum exceeding the amount of its claim, Warren Webster and Company served notice pursuant to § 43-709, Burns' 1933, to establish personal liability of the owner.

Separate actions filed by the appellants were consolidated for trial. The facts were stipulated. Each secured judgment against Fenneman and one also had judgment against Indiana Heating & Plumbing Company. The owner, contractor and surety prevailed below. The three appeals are treated as one. All questions are properly presented upon assignment of error in overruling motions for new trial specifying that the decision is contrary to law. The amounts due as stipulated were fixed by the judgments against Fenneman and his corporation. The liability, if any, of each of the other appellees is the same as that of Fenneman as of the date of the judgment against him.

Three questions are presented and have been ably briefed and orally argued. We shall consider them in the order in which they are stated.

First, does Warren Webster & Company, who sold to Fenneman material that was used in the construction of the building, but who performed no labor thereon, come within the purview of § 43-709, Burns' 1933, so that by the notice given pursuant thereto it may enforce personal liability against the owner for the unpaid purchase price of the material?

Second, may each of the appellants as unnamed beneficiary of the contract between the owner and contractor recover from the latter the balance of the purchase price of the material sold to subcontractor Fenneman and used by him and his corporation in the construction of the buildings?

Third, if the second question is answered in the affirmative, is the surety also liable to appellants by the terms of its bond?

We are indebted to appellant's counsel for the elision in quoting § 43-709, Burns', *supra*, as follows:

"'Any sub-contractor, journeyman or laborer employed in erecting . . . any house . . . or other building . . . or in furnishing any material or machinery therefor, may give to the owner thereof . . . notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount which may be due and may thereafter become due from him to the employer; . . . And any such sub-contractor, journeyman or laborer, by giving notice as above provided . . . shall have the same rights and remedies against such owner for the amount of such labor performed, or material or machinery furnished, after said notice is given, as are above secured and provided, (for those) who serve notice after the labor

is performed or the materials or machinery furnished. . . .' "

This is Section 8 of the mechanic's lien law enacted in 1909, Acts 1909, page 295, under the title of ". . . an act concerning liens of mechanics, laborers, journeymen, contractors and sub-contractors and material men. . . ." A similar section has been a part of every mechanic's lien law enacted in this State beginning with a law entitled "An act giving to mechanics a lien upon buildings," Acts 1834, page 165. Section 8 thereof provides "That any journeyman or labourer who may be employed in the construction . . . of any building, or in furnishing any materials for the same, may give to the owner . . . of the . . . buildings . . . on which they may have worked, notice in writing, particularly setting forth the amount claimed to be due, and the services rendered, and that the employer is indebted to him or them. . . ." In the Revised Statutes of 1843 the word "sub-contractor" is inserted before the word "journeyman" but there are no other material amendments. R. S. 1843, p. 777. In 1852 the section was condensed to read as follows:

"Any sub-contractor, journeyman or laborer employed in the construction or repair or furnishing materials for any building, may give to the owner thereof notice in writing, particularly setting forth the amount of his claim, and service rendered for which his employer is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount due from him to the employer at the time of notice, which may be recovered in an action." 2 R. S. 1852, § 649.

In 1867 the section extended the liability to cover work performed or material furnished after the service of

the notice and further provided that all persons in like status might participate pro rata in a judgment against the owner if the full sum of their claims could not be collected. Acts 1867, p. 97. From that time on, however, the wording of the section has been substantially as in the present act. Every reenactment has used the disjunctive "or" as refuting any inference that to recover the plaintiff must have furnished both labor and material.

The principal argument in appellees' brief is that the words "employer" and "employed" and the phrases in which they are used indicate a legislative intent that the one who seeks to recover under this section must occupy the status of an employee or servant of the person with whom he contracted to furnish his labor or sell his material. The 1834 act afforded some basis for this contention because it applied only to laborers, a journeyman being merely a laborer or mechanic who has completed his apprenticeship and learned his trade, and the section also then contained the phrase "buildings on which they may have worked," but this phrase has not reappeared in the section since it was omitted in 1852.

One who contracts with a subcontractor is himself a subcontractor. See *Stephens et al.* v. *Duffy* (1908), 41 Ind. App. 385, 81 N. E. 1154. Parties to a contract may agree, as they did in the contract we shall later consider, that only he who contracts directly with the principal contractor shall for the purpose of the contract be a subcontractor but obviously this definition is neither controlling nor persuasive as to the meaning of the same word as used for over seventy-five years in this statute. Nor does the current use of "employer and employee" in lieu of the ancient terms "master and servant" tend to define the

word "employer" as used when this section was in its formative stages from 1838 to 1867.

The present section, to apply it to the facts in this case, (with additional elision) reads:

> "Any sub-contractor . . . employed . . . in furnishing any material . . . therefor (i. e. for a building under construction) may give to the owner thereof . . . notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer is indebted to him, etc."

One who is employed in furnishing material is engaged in so doing. The person who contracted with him to furnish the material may, without straining the meaning of the word, be called his "employer." The phrase containing "services rendered" in the 1834 act doubtless was intended to require details of the kind of labor performed and the price per hour or per day. But after the early amendments above mentioned "services rendered" may also be deemed to mean a bill of particulars for material furnished.

Those to whom this interpretation is not acceptable must nevertheless concede that the statute is ambiguous. The ambiguity may therefore be resolved by application of the usual principles of statutory construction.

In oral argument counsel for the owner were driven to the admission that a journeyman or a laborer who furnishes material but performs no labor on the building may, simply because he bears the title of journeyman or laborer, pursuant to this section, enforce personal liability against the owner for the value of the material furnished. We can see no rational ground for denying the same benefit to one who bears the title of merchant or manufacturer and

who furnishes the material without performing any labor. The courts will avoid, so far as it may be done consistently with the language of an act, any construction that results in an arbitrary or capricious classification denying to one and granting to another group of citizens the benefits of remedial legislation. *County Dep't. of Pub. Welfare* v. *Potthoff* (1942), 220 Ind. 574, 583, 44 N. E. (2d) 642.

At least eight opinions of this court have recognized the right of mere materialmen to avail themselves of the provisions of this section. They are *Raleigh* v. *Tossettel* (1872), 36 Ind. 295; *O'Halloran* v. *Leachey* (1872), 39 Ind. 150; *Colter et al.* v. *Frese et al.* (1873), 45 Ind. 96; *Crawford et al.* v. *Crockett et al.* (1876), 55 Ind. 220; *Irwin et al.* v. *City of Crawfordsville* (1877), 58 Ind. 492; *Secrist* v. *Board of Commissioners of Delaware County* (1884), 100 Ind. 59; *Hubbard et al.* v. *Moore* (1892), 132 Ind. 178, 31 N. E. 534; *Halstead* v. *Olney J. Dean & Co.* (1914), 182 Ind. 446, 105 N. E. 903. No case has been cited nor found where a different result was reached or suggested.

The first case, *Raleigh* v. *Tossettel, supra,* was a proceeding under § 649 of the revision of 1852 as amended in 1867. Tossettel, a materialman, had furnished brick to contractors engaged in the construction of a house for Raleigh. The court said: "Under section 649 Raleigh was liable to the appellee to the amount that was due from him to Crist & Co., at the time when such notice was served upon him and for such sum as might thereafter be due from him to them."

In *O'Halloran* v. *Leachey, supra,* the court reversed the judgment for error in sustaining a demurrer to the complaint which alleged that Leachey was indebted

to O'Halloran "in the sum of sixty dollars, being the balance due on stone and stone work used by one ———— Lincoln, in and about the erection" by him of a building for Leachey. The relief sought was personal judgment against the owner and foreclosure of a lien on the building. The court held the complaint sufficient to enforce personal liability but said that no question was presented as to whether the materialman was entitled to both remedies in the same action.

In *Colter* v. *Frese et al., supra,* it is interesting to note that with the 1852 statute correctly abstracted on p. 99 of the opinion, the court on p. 103 uses the following language:

> "It is urged that inasmuch as section 649 provides that sub-contractors, journeymen, laborers, and material-men may have a personal action against the owner for their work or materials, by giving him the notice therein provided for, to the extent of what is due, or may become due, from him to the contractor, they should not be held to have the right to acquire a lien. We find nothing, however, in this section that, in our opinion, indicates an intent on the part of the legislature to withhold from them the right to acquire a lien as provided for in the two preceding sections.

> "The contractor has the right to a lien and also to his personal action against the owner. The object of the law was to place the sub-contractor, journeyman, laborer, and material-man upon the same footing with the contractor, except that the personal action against the owner in favor of the sub-contractor, etc., is limited by the amount that may be due or may become due from the owner to the employer. The lien given might be an inadequate remedy, as the property might be previously encumbered to an extent that would render the lien unavailable; hence the right of a personal action against the owner is conferred to the extent indicated."

The court apparently did not include "materialmen" as subcontractors but added them as an independent class.

We quote from *Crawford et al.* v. *Crockett et al.*, *supra*, as follows: "Section 649 provides for a personal liability in favor of sub-contractors, *material men* (our emphasis), etc., against the owner of the building, for the amount of their claims against their employer, but not to exceed the amount that is due, or may become due, from the owner to the employer; but they must, in order to hold the owner personally liable, give him notice in writing, particularly setting forth the amount of their claims, and that they hold him responsible therefor. · Thus it is seen that material men, etc., may acquire a lien upon the property to the extent of the value of the materials furnished, or they may hold the owner of the building personally liable, not exceeding the amount that may be due, or may become due, from him to the contractor. They may do one or the other, or both."

Again in *Irwin et al.* v. *City of Crawfordsville, supra*, judgment was reversed for error in sustaining a demurrer to a complaint which alleged:

"That the plaintiffs, as sub-contractors, furnished to the contractors one hundred and eighty thousand brick, on which was due, to the plaintiffs, thirteen hundred and fifty dollars, on the 17th of October, 1872; that, on that day, there was due to the contractors, Alexander & Whitsett, from the city of Crawfordsville, on account of the building for which these plaintiffs furnished said brick, the sum of four thousand dollars, belonging to the said Alexander & Whitsett, on account of their contract for the completion of the said city building; and that, on that day, the plaintiffs gave notice, in writing, to the common council of said city of Crawfordsville, of the amount of their claim, $1,350, that was due to them for brick furnished

for said building, and that they, the plaintiffs, would hold the said city liable for the amount of their said claim of thirteen hundred and fifty dollars; and the plaintiffs aver, that afterward, in her own wrong, by the common council of said city, and to the great injury of plaintiffs, said city paid to said Alexander & Whitssett said sum of four thousand dollars."

The opinion is in one paragraph as follows:

"The question is, was this paragraph sufficient on demurrer? or was it necessary that it should set forth a copy of the written notice, that the court might judge of the sufficiency? In such case as this, is the written notice the foundation of the action? We think it is not, and that the said second paragraph of the complaint is sufficient."

In the course of its opinion in the case of *Secrist* v. *The Board of Commissioners of Delaware County, supra,* the court said, in referring to the section of the statute now under consideration, "Section 5295, *supra,* provides for the personal liability of an owner to a material man . . . it undertakes to establish a personal liability of the owner to the party who, under section 5293, R. S. 1881, might have a lien."

In *Hubbard et al.* v. *Moore, supra,* it appeared that Moore sold wood work to a contractor for use in a building and that there was a balance due for the purchase price of the material. The complaint was crudely drawn attempting both to enforce personal liability and to foreclose a lien. Judgment was given to Moore which was sought to be sustained in the Supreme Court under the personal liability section. The court said:

"There was a written notice given, after the materials were furnished, as required by section 1696, Elliott's Supp., but there is no evidence that Mrs. Hubbard was indebted to the contractor,

Waggaman, at the time the notice was given, at least not to exceed the amount of $116, which amount she had paid to appellee, and he had accepted, before this suit was commenced so that there would be no liability under that section."

The last case, *Halstead* v. *Olney J. Dean & Co., supra,* was decided under the present statute and held § 8 within the title of the act on the theory that it "embraces matters which are germane to and properly connected with the general object and purpose of the act as a whole." The opinion discloses that the appellee sold material to Halstead and Moore, who had contracted to erect a building for Cole Motor Car Company, against whom went personal judgment pursuant to this section.

In every one of the above cases, so far as appears from the opinions, the materialman furnished no labor but merely sold materials to a contractor or subcontractor who incorporated them into the building. In none of them was the precise question before us stated or discussed. Are these cases sufficiently determinative of the question before us that we may rest it upon the rule of *stare decisis?* This maxim is most frequently applied where to disturb the prior ruling would probably affect real property and vested rights, but its application is not confined to such questions. In situations requiring statutory construction it is frequently used. See *Dailey* v. *Pugh* (1924), 83 Ind. App. 431, 437, 131 N. E. 836, and cases cited, 14 Am. Jur., *Courts,* §§ 65, 66, and 21 C. J. S., *Courts,* § 214. In *Willis & Turner* v. *Moore & Davis* (1924), 151 Tenn. 562, 271 S. W. 736, the court conceded that the precise question before it, one of practice, had not been directly decided but nevertheless said that the principles underlying the doctrine of *stare decisis* "would seem to war-

rant the extension thereof to a construction which, although not directly decided, has been recognized by acquiescence and uniform adoption and practice over many years." This court has applied the same rule with respect to another statute in *Stout* v. *Board of Commissioners of Grant County* (1886), 107 Ind. 343, 8 N. E. 222, as follows:

> "Conceding that this court, as at present constituted, might, as an original question, feel inclined to place a different construction upon the section of the statute involved in this cause, we would, nevertheless, regard the reasons for such a different construction as too shadowy and unsatisfactory, and the lapse of time too great, to justify us in overruling the case of *Edger* v. *Board, etc., supra,* and the later case founded upon it."

In that case, however, the court suggested and in other cases has applied a somewhat analogous but, as pertains to the issue now under consideration, a more cogent rule, namely, that stated in *Board of Commissioners of Monroe County* v. *Conner* (1900), 155 Ind. 484, 486, 58 N. E. 828, as follows:

> "Moreover, it is a settled rule of statutory construction that when a statute or a part of a statute has been construed by the courts of the State and the same is substantially reenacted the legislature adopts such construction, unless the contrary is clearly shown by the language of the act."

See also *Moore-Mansfield Constr. Co.* v. *Indianapolis, etc., R. Co.* (1913), 179 Ind. 356, 101 N. E. 296, 44 L. R. A. (N. S.) 816. Here we have a uniform construction of a statute, in existence without substantial amendment from 1867 to the present date, with at least two complete reenactments, 1883 and 1909, and numer-

ous amendments of other sections, but with no change in the language of the section so construed. None but the most cogent reasons should cause us to deviate from that construction.

Another argument made by the appellee owner is that in the lien section as reenacted in 1909 there is expressed an intention to include materialmen under the phrase "all persons performing labor or furnishing materials" but in the personal liability section there is no such language. He relies therefore upon the maxim *expressio unius est exclusio alterius*. This maxim may be persuasive in a doubtful case but is not conclusive. There has been comparatively little litigation respecting the personal liability section but a great deal with respect to the lien sections as disclosed in *Moore-Mansfield Constr. Co.* v. *Indianapolis, etc., R. Co., supra,* where the history of mechanic's lien statutes in America is at length reviewed. Whenever there has been a question raised as to whether a particular class of persons contributing to the construction of a building may take advantage of the statute the courts have resolved doubts in favor of such class and the Legislature has frequently put the matter beyond dispute by reenacting the statute expressly including the class. We indulge the belief that had this court, in any of the cases where personal liability of the owner to materialmen has been recognized, held or indicated that they were not included the Legislature in line with its consistent policy with respect to the lien section would have broadened the statute expressly to include them. In any event we are not persuaded by the maxim in the face of the uniform judicial and legislative construction of the section persisting for so many years.

In the course of the opinion in the Moore-Mansfield case the court said:

> "The mechanics' lien laws of America, in general, reveal the underlying motive of justice and equity in dedicating, primarily, buildings and the land on which they are erected, and which have given to them an increased value. The purpose is to promote justice and honesty, and to prevent the inequity of an owner enjoying the fruits of the labor and material furnished by others, without recompense."

We think the same underlying purposes should be given effect in construing the personal liability section. It is incidental or germane to the lien sections of the act, else the decision in *Halstead* v. *Olney J. Dean Co., supra,* would have been otherwise. In *Crawford et al.* v. *Crockett et al., supra,* it was held that the materialman might use either remedy. Since 1909 the lien section has contained a provision whereby the owner by recording his contract providing against liens may protect himself against the acquisition thereof, and this was done in the instant case. With such provision it would seem to be more essential that persons who like appellants herein would otherwise be entitled to liens should have the additional protection of the personal liability section.

The owner appellee relies upon *Duncan* v. *Bateman* (1851), 23 Ark. 327, 79 Am. Dec. 109, as holding that one who furnishes material without doing any work should have no lien. The statute there involved provided that "all artisans, builders, and mechanics of every description, who shall perform any work and labor on any building . . . shall have an absolute lien . . . for such work and labor, as well as for materials furnished by them in and about such work

and labor." We think that statute was analogous to our 1834 statute containing the phrase "buildings on which they may have worked" which was eliminated in 1852. Obviously the Arkansas statute was intended solely for the protection of the worker and the fact that he was protected also for materials he furnished was merely incidental.

But it is said that since *Caulfield* v. *Polk* (1895), 17 Ind. App. 429, 435, 46 N. E. 932, which relied upon *Duncan* v. *Bateman,* *supra,* our statute has had the same interpretation. Our Appellate Court held therein only that one who sells material to another person who in turn sells it to a contractor is not entitled to a lien under the statute. The court said:

> "A material man should be, and is, protected for any machinery furnished to a person authorized to put the same in a building, whether such person be an owner or a contractor or a subcontractor. Beyond this the statute does not go in terms, and should not go by implication."

In *Rudolph Haggener Co.* v. *Frost* (1915), 60 Ind. App. 108, 108 N. E. 16, the court adhered to that doctrine. There is nothing in either of these cases that conflicts with our views. Appellants furnished their material to "a person authorized to put the same in a (the) building."

We are not impressed with appellee's argument that this statute may be given a liberal construction to determine whether the subject-matter is within the scope of the title but must be given a strict construction to determine the classes of creditors who may avail themselves of its provisions. The purpose of any construction is to ascertain the intent of the Legislature. "Liberal' or "narrow" may charac-

terize the attitude of approach but the final question is whether, after applying the usual well known aids to statutory construction, the conclusion reached is consistent with that which the Legislature may reasonably and probably have intended.

We conclude that Warren Webster & Company was entitled to judgment against Marcy Realty Corporation, Inc.

It is settled in Indiana that contracts for the erection of private buildings containing provisions that the contractor shall pay for all material afford to unnamed materialmen a remedy as third party beneficiaries against the contractor. *Knight-Jillson Co.* v. *Castle* (1909), 172 Ind. 97, 87 N. E. 976; *Ochs* v. *M. J. Carnahan Co.* (1906), 42 Ind. App. 157, 76 N. E. 788, transfer of which was denied shortly before the decision in the Knight-Jillson case. This rule is not peculiar to Indiana but it has not been adopted in all jurisdictions. See 9 Am. Juris. *Building and Construction Contracts,* § 94, et seq.; *Fidelity & Deposit Co. of Baltimore, Maryland* v. *Ranier, etc.* (1927), 220 Ala. 262, 125 So. 55, 77 A. L. R. 13, and note, also notes in 118 A. L. R. 57 and 128 A. L. R. 938. In this case we have two contracts, the one executed by the owner with the contractor and the other the surety bond given to secure performance of the former. Appellees contend that they must be read together as one instrument. Appellants say that in determining liability under the contract the terms of the bond need not be considered and cite *Milske* v. *Steiner Mantel Co.* (1906), 103 Md. 235, 63 A. 471, 5 L. R. A. (N. S.) 1105, which held that a provision in a bond, given to secure the performance of a building contract, "that the principal shall not, nor shall the surety, be liable for any damage resulting from an act of God" could

not be considered in determining liability under the contract for the loss by fire of the partly constructed building. This case was cited and the principle applied in *McElwrath* v. *City of McGregor* (1933), Tex. Civ. App., 58 S. W. (2d) 851, 854, where it is said:

"The mere fact that the city was willing to accept from the contractor a bond less onerous than the original contract did not relieve the contractor from the obligations assumed in his original contract. The contract and the bond were separate obligations. While the bond may have limited the liability of the surety, it did not affect the liability of the contractor under his original contract. *Milske* v. *Steiner Mantel Co.*, 103 Md. 235, 63 A. 471; 5 L. R. A. (N. S.) 1105, 115 Am. St. Rep. 354; *Chamberlain* v. *Fox* (Tex. Civ. App.), 54 S. W. 297; *Lindheim* v. *Muschamp*, 72 Tex. 33, 12 S. W. 125; *Cohen* v. *Munson*, 59 Tex. 236."

A similar conclusion was reached in *American Surety Company* v. *School District No. 64* (1928), 117 Neb. 6, 219 N. W. 583, at 587, which quotes at length from the Maryland case. While it is generally held that instruments executed at the same time and by the same parties may be considered as one contract or if not treated as one contract that either of them may be referred to for the purpose of construing ambiguous language in the other, we do not think this rule should here be applied. The parties are not the same since the surety is not a party to the original contract. The owner was not an executing party of the bond although it ran to him. While there was a provision in the contract that a bond should be executed, that provision, evidently inserted at the request of the Federal Housing Administrator, was that the bond should be "in form and executed by the sureties satisfactory to the Administrator." The owner may have acquiesced to its terms

but he had no choice, as against the will of the administrator as to its contents or as to the surety. The contract required a bond yet so far as the owner was concerned it might have been waived. These considerations and other reasons given in the cited cases preclude our present consideration of the terms of the bond.

The contract is in two portions. The first provides "that the Contractor shall furnish all the materials and perform all the work shown" on plans and specifications which include "the general conditions of the contract consisting of Articles one to fifty-four inclusive, of the Standard Form, current edition of the 'American Institute of Architects' " (except as specifically modified in said specifications). Article 9 of these specifications reads in part as follows:

"Unless otherwise stipulated, the Contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work. . . ."

Unless we can find in the contract other stipulation requiring a different construction we think it is clear that the contractor was obligated to appellants by the phrase "pay for all materials." In this assertion we are not unmindful of appellees' contention that the contract "must clearly evidence a distinct intention to benefit such third person," citing *Irwin's Bank* v. *Fletcher, etc., Rec.* (1925), 195 Ind. 669, 672, 145 N. E. 869, 146 N. E. 907; *State of Indiana ex rel. Hay et al.* v. *U. S. F. & G. Co. of Baltimore, Maryland* (1930), 92 Ind. App. 4, 172 N. E. 656. The contentions made in the former did not require so emphatic a statement as that quoted, which is the only authority cited for the statement in the later case. We do not understand

that the intention of the parties as to third party beneficiaries is to be tested by any stricter or different rule than their intention as to other terms of the contract.

The only provision upon which appellees rely ▉ to disclose an intention contrary to that expressed in Art. 9 is a part of Art. 37, reading:

> "The Contractor agrees . . . (h) To pay the Subcontractor on demand for his work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue, even though the Architect fails to issue it for any cause not the fault of the Subcontractor."

We regard this provision as regulating the method of payment during construction to a subcontractor as de-- fined in the contract. It does not at all conflict with the contractor's express obligation to pay others for labor or materials. Against appellees' contention and in harmony with Art. 9 the owner by Art. 22 is given the right to terminate the contract upon certain contingencies including the failure of the contractor "to make prompt payments to his subcontractors or for material or labor." (Note the use of the disjunctive.) In Art. 26 is a similar provision giving the right to withhold or "nullify the whole or a part of any certificate to such extent as may be necessary to protect the Owner from loss on account of: . . . (c) Failure of the Contractor to make payments properly to subcontractors or for material or labor. . . ." Having found no other stipulations or inconsistent provisions in the contract itself we must give effect to the provisions quoted of Art. 9 and hold that appellants had a cause of action thereunder against the contractor.

By reference the contract is made a part of the bond which contains four obligatory clauses as follows: (Our numbering.)

"NOW WHEREFORE, the Condition of this Obligation is such that, (1) if the Principal shall faithfully perform the Contract on his part (2) and shall indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do (3) and shall fully reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default,

"(4) And further, that if the Principal shall pay all persons who have contracts directly with the Principal for labor or materials, failing which such persons shall have a direct right of action against the Principal and Surety under this Obligation, subject to the Owner's priority,

"Then this Obligation shall be null and void, otherwise it shall remain in full force and effect."

Clause (1) is not only the first named but also the most important, since it carries into effect the provision of the contract that its performance be secured by bond. Were it the only provision there would be no doubt that appellants, having rights of action against the "Principal" upon the contract, have the same rights against his "Surety" on the bond. The second clause is surplusage for its obligations are included in Clause (3) which is itself incidental to Clause (1). The bone of contention is Clause (4), the surety insisting that it is a limitation of its liability, upon the theory that the mention of "persons who have contracts directly with the Principal" excludes persons like appellants whose sales were not to him but to a subcontractor. Appellants would apply the rule stated in the first sentence of 12 Am. Jur., *Contracts*, § 243, as follows:

"It has been laid down as elementary law that if two clauses of an agreement are so totally repugnant to each other that they cannot stand together, the first shall be received and the latter rejected."

In the same section we find this qualification:

"The rule should not be given effect where the first words are inconsistent with later words expressing the dominant purpose of the instrument. Where a repugnancy is found between clauses, the one which essentially requires something to be done to effect the general purpose of the contract is entitled to greater consideration than the other."

But for the application of the maxim *"expressio unius est exclusio alterius"* there would be no repugnancy between Clauses (1) and (4). Liability to all materialmen includes liability to those who sell directly to the contractor. When the general clause which expresses "the dominant purpose of the instrument" is all inclusive, why should we restrict its meaning by applying a maxim which is only an aid to construction? To avoid treating Clause (4) as surplusage is the best reply but the author of the bond was not disturbed by the surplusage in Clause (2). We are not dealing with language of a constitution or a statute. These are assumed to be written with great care that not a word be meaningless. Not so are many contracts even standard forms such as this bond which was approved by the same association that approved the form of contract. After the surety's signature appears a note to the effect that Clause (4) is an additional protection to the owner for which an extra premium is chargeable. This indicates ignorance of the legal significance of Clause (1) as affected by our construction of the building contract. Both contract and bond may be subject to a different interpretation in other jurisdictions which

do not recognize the rights thereunder of unnamed third party beneficiaries. But to us it seems anomalous to treat as a limitation of liability a clause designated upon the form as one increasing both the surety's obligation and his compensation. Preferable is a construction that is harmonious with the prime purpose of the bond.

The judgments are reversed with instructions to enter judgments for all appellants against the contractor and the surety and for Warren Webster & Company against also the owner for the amounts and as of the date of the judgments against Fenneman.

NOTE.—Reported in 54 N. E. (2d) 263.