In the Matter of Rocky Thomas
HULL, Debtor.

Bankruptcy No. FB 79–00277.

United States Bankruptcy Court,
N. D. Indiana,
Fort Wayne Division.

April 16, 1982.

Stephen D. Long, Fort Wayne, Ind., for bankrupt.

John J. Wernet, Fort Wayne, Ind., trustee.

R. John Wray, Fort Wayne, Ind., for Environmental Systems, Inc.

Frederick A. Beckman, Fort Wayne, Ind., for Mr. & Mrs. Thomas R. Starn.

ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

This matter is before the Court on the objection of Environmental Systems, Inc., claimant, (hereinafter "Environmental") objecting to the trustee's disallowance of its Claim No. S–2. The matter involves a subcontractor, Environmental, who performed services under a home building contract between the bankrupt, a general contractor,

1. Ind.Code Ann. § 32–8–3–9 (Burns 1980).

and Mr. and Mrs. Starn, the owners of the realty. In addition to Environmental's claim against the bankruptcy estate for services rendered under the contract, the owners have filed an unsecured claim in this case based on the bankrupt's failure to complete the building contract for amounts they expended to have the home finished. Furthermore, the trustee asserts a contract claim against the owners regarding their failure to pay as provided therein. A hearing was held on January 7, 1981 at which the parties agreed that a stipulation of facts, pleadings, and briefs would constitute the full submission of this matter. Upon receipt of the stipulation and briefs, the matter was taken under advisement on April 16, 1981.

There is no controversy regarding the facts in this case. Environmental worked as a subcontractor on the construction of a residence under a contract between the bankrupt, a general contractor, and Mr. and Mrs. Starn, owners of the property.

The parties have stipulated to the following:

1. The amount of said creditor's claim is $3,500.00.

2. On April 16, 1979 creditor Environmental Systems, Inc. gave notice to Mr. and Mrs. Thomas R. Starn pursuant to Indiana Code Section 32–8–3–9 of an intent to hold Mr. and Mrs. Starn personally liable for the above balance due in the amount of $3,500.00; and that said notice complies with the requirements of form of said Indiana Code Section 32–8–3–9.[1]

3. On April 16, 1979 there was an amount due and owing by Mr. and Mrs. Thomas R. Starn to Rocky Thomas Hull in excess of $3,500.00; and that there are at the date of preparation of this stipulation still monies owing by the Starns in excess of $3,500.00.

4. The agreement between Rocky Thomas Hull and Mr. and Mrs. Thomas R. Starn was prepared on the Allen County Indiana Bar Association Standard Form entitled "Building, Construction And No-Lien Agreement."

The construction contract includes clauses which among other things provide that:

a) Builder will fully pay, when due, all bills for materials furnished and all wages and compensations due or to become due to each and every employee or laborer.

b) Builder for itself and for all other persons or corporations who may perform labor or furnish materials, supplies, tools or equipment for the construction of the improvements described herein, or for work incidental to such construction, hereby waives and relinquishes all right to claim or file notice of a mechanic's lien upon said real estate or any part thereof or upon any buildings or improvements thereon. Builder, for itself, and for all sub-contractors ... does hereby agree that no lien or notice of lien shall in any event or circumstances whatever, attach to, or be claimed or filed against said building and appurtenances, or any part thereof, or against the real estate on which the same is located, or any part thereof; and in the event Builder shall fail to obtain the release of any liens filed, Builder shall indemnify, save and hold harmless Owner from any expenses incurred in obtaining the release of any such lien, including attorney fees.

The parties to the contract filed and recorded the same and otherwise complied with the statutory requirements of Indiana to make the No Lien Agreement valid against subcontractors. Indiana Code Section 32–8–3–1.[2]

When Environmental notified the Starns on April 16, 1979 that it intended to hold them personally liable, the owners were liable to the bankrupt in a sum in excess of Environmental's claim.

On May 25, 1979 the contractor filed his voluntary petition in bankruptcy listing Environmental Systems, Inc. as an unsecured

creditor. The owners, by their attorney Mr. Frederick Beckman, filed an unsecured claim in the amount of $65,048.00 liquidated plus $1,000.00 for necessary repairs. Environmental filed a claim as a secured creditor in the amount of $3,500.00. The trustee recommended that the claim be disallowed on the grounds that the No-Lien Agreement prohibited creditor from securing a lien and therefore no lien had attached. The creditor then filed its objection to disallowance of the claim.

At the hearing involving Environmental's claim and the claim of the owners, the Court was informed that the trustee and the owners had settled on an amount payable by the owners that would resolve the trustee's contract claim against the owners and their claim against the bankrupt.[3] The owners are holding this money (fund) pending resolution of Environmental's claim. In essence the owners are willing to pay a sum to finalize their dealings with the bankrupt but they do not wish to be exposed to a double liability by paying the trustee in settlement of the contract and then being forced to additionally pay the subcontractor who should have been paid under the contract and who has a statutory right of action against the owners for the amount of its labor performed under the contract.

Although this matter was not brought before the Court as an interpleader action, in effect, to do justice and equity and to adequately administer this estate, the Court is presented with circumstances that should be treated as if an interpleader were involved. See 48 C.J.S. Interpleader § 2 and cases cited therein. Therefore, the Court determines that it is necessary and appropriate to carry out the provisions of the Bankruptcy Act under the authority given to the Court by Section 2(a)(6) and (15) of the Bankruptcy Act[4] to resolve in this pro-

---

**2.** Ind.Code Ann. § 32–8–3–1 (Burns 1980).

**3.** The trustee states in his brief at page 1 that he and the Starns have agreed, subject to the approval of the Court, that the Starns are liable to the bankrupt in the total sum of $4,500.00.

**4.** 11 U.S.C.A. § 11(a)(6) and (15) (West 1966). Although the repeal by Congress of the Bankruptcy Act became effective October 1, 1979, a case commenced under the Act continues to be governed by it. 11 U.S.C.A. at 2 (1979) (Savings Provisions in Section 403 of Pub.L. 95-598, Title IV, Nov. 6, 1978, 92 Stat. 2683).

ceeding all of these claims (Environmental's, the owners', and the trustee's) which involve the same building contract that is in evidence, the same parties who have claims before this Court regarding the contract, and one fund held by one of the parties.

Environmental contends in its objection to disallowance of its claim that the No-Lien Agreement only prohibits the filing of a "Notice of Intention to Hold a Mechanic's Lien" but does not prohibit Environmental Systems, Inc. from filing notice to hold the owners personally liable under Indiana Code Section 32–8–3–9. Environmental also asserts that compliance with this statute by Environmental gives it all the rights, priorities, and remedies as are provided for those who file a "Notice of Intention to Hold a Mechanic's Lien." Consequently the creditor has a right, prior and superior to that of the trustee, to receive payment of $3,500.00 from money held by the Starns and due to the bankrupt.

Environmental argues that its right to the money is superior to trustee's since only it secured a claim on the money by complying with the requirements of Indiana Code Section 32–8–3–9. Neither the bankrupt nor the trustee gave the notice required by the statute. Therefore the bankrupt and trustee have only a general unsecured contract claim to the money while Environmental has a secured claim by means of a statutory right to the amount due Environmental Systems, Inc.

The trustee says that the statute relied upon by Environmental gives to a subcontractor who complied with its provisions a lien on the money which the owner holds and which is due to the general contractor to the extent of the balance due the subcontractor. However, the trustee contends, the same statute provides that all subcontractors who have performed labor and have given notice to the owner may become parties to an action against the owner, and, if upon final judgment against such owner, the amount recovered and collected shall not be sufficient to pay the claimant in full, the same shall be divided pro rata. Conse-

quently Environmental has a lien on the sums held by the owner, but does not have priority over other subcontractors.

The trustee then asserts that Section 70(c)(3) of the Bankruptcy Act[5] gives the trustee, by means of the hypothetical lien creditor status, the same rights as any other subcontractor-creditor, including the right to share pro rata with Environmental Systems, Inc. Because of the right to share pro rata, the trustee argues that Environmental Systems, Inc. cannot have a secured claim and therefore its claim must be deemed unsecured.

### Findings of Fact

In addition to the stipulated facts, which are hereby incorporated into these findings, the Court also finds that:

1. Environmental Systems, Inc. complied with all requirements of Indiana Code Section 32–8–3–9.

2. Neither the trustee nor the bankrupt took any of the required steps to secure a mechanic's lien nor to hold the owner personally liable as set out in the Indiana Code.

3. The contract between the owners and the bankrupt required the full payment of subcontractors when payment was due.

4. The contract contained a prohibition against and waiver of all right by the general contractor and those working under him to claim or file notice of a mechanic's lien upon the real estate or any part thereof or upon any buildings or improvements thereon, and provided that no lien shall attach to or be filed against the building and appurtenances or against the real estate.

5. The contract required that the bankrupt, should it fail to obtain the release of any lien, indemnify, save and hold harmless the owner from any expense incurred in obtaining the release of such liens.

### Issues

1. Whether compliance with Indiana Code Section 32–8–3–9 gives Environ-

---

5.   11 U.S.C.A. § 110(c)(3) (West Supp. 1979).

mental a mechanic's lien that can be asserted against the owners.

2. Whether the No-Lien Agreement prevented Environmental from securing any special rights to the money held by the owners.

3. Whether, if a mechanic's lien is found to exist, the trustee is able to use the status conferred upon him by Section 70(c)(3) of the Bankruptcy Act to make Environmental's claim an unsecured claim.

4. Whether, if a mechanic's lien is not found to exist, Environmental is entitled to a claim on the money in the hands of the owners that is superior to the trustee's claim on the same.

It appears that the law in Indiana regarding the personal liability section of the mechanics' lien statutes is somewhat confusing and unclear. The statute involved in this case is as follows:

Indiana Code Section 32–8–3–9[43–709]. Personal Liability of owner.—Any subcontractor, lessor leasing construction and other equipment and tools, whether or not an operator is also provided by the lessor, journeyman or laborer employed or leasing any equipment or tools used by the lessee in erecting, altering, repairing or removing any house, mill, manufactory or other building, or bridge, reservoir, system of waterworks, or other structure or earth moving, or in furnishing any material or machinery therefor, may give to the owner thereof, or, if said owner is absent, to his agent, notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer or lessee is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount which may be due, and may thereafter become due, from him to the employer or lessee, which may be recovered in an action whenever an amount equal to such claim, over other claims having priority, shall be due from such owner to the employer or lessee. And any such subcontractor, equipment lessor leasing equipment, journeyman or laborer, by giving notice as above provided, setting forth the amount of labor he has engaged to perform, or of materials or machinery he has engaged to furnish, in erecting, altering, repairing or removing of any of the buildings or other structures above described, shall have the same rights and remedies against such owner for the amount of such labor performed, or materials or machinery furnished, after said notice is given, as are above secured and provided, for those who serve notice after the labor is performed or the materials or machinery furnished. And whenever an action is brought against an owner, in pursuance of the provisions of this section, all subcontractors, equipment lessors leasing equipment, journeymen and laborers who have performed labor or furnished materials or machinery, and given notice as herein required, may become parties to such action; and if, upon final judgment against such owner, the amount recovered and collected shall not be sufficient to pay said claimants in full, the same shall be divided among them pro rata. [Acts 1909, ch. 116, § 8, p. 295; 1971, P.L. 424, § 2.]

### What Is the Effect of Complying With the Statutory Requirements To Hold The Owner Personally Liable

Courts vary in the interpretation given to statutes similar to Indiana Code Section 32–8–3–9 depending upon the statutory wording and prior case law. Some courts take the position that this type of statute merely puts the subcontractor on the same footing as the general contractor in that the subcontractor can also maintain an action *in personam* against the owner for an amount due the subcontractor from the general contractor. *Lockridge v. Brockman*, 137 F.Supp. 383 (N.D.Ind.1956). Other courts say that this type of statute gives the subcontractor a lien upon money in the hands of the owners owing to the general contractor. *Pittsburgh Plate Glass Co. v. Heintz*, 23 Ohio Dec. 575 (1913). Some courts have decided that this type of statute has the

effect of transferring the obligation of the owner, by the general contractor, to the subcontractors-lienholders to pay the amount due the subcontractors. *Perry v. Wood*, 63 F.2d 257 (5th Cir., 1933).

Certain commentators have said that while the right to hold the owner personally liable is usually conferred by the same statutes which provide for mechanics' liens and is termed a "lien", the remedy provided is really more in the nature of an equitable garnishment, or, as frequently stated, the notice to the owner has the effect of working an assignment pro tanto of that which is due or to become due from the owner to the contractor from the time of the service of such notice. They say that the remedy is distinct and disconnected from, and in addition to, the remedy by lien on the land and building and should be regarded with favor by the courts. 57 C.J.S. *Mechanics' Liens* § 114 at 620 (1948).

Bankruptcy courts look to the law of the appropriate state regarding the existence, nature, requirements and priorities of state statutory rights though state law is not dispositive of all issues in a bankruptcy case.

There has been little litigation in Indiana construing this particular statute. Decisions in earlier Indiana Supreme Court cases have determined that Indiana Code Section 32-8-3-9 is not a mechanic's lien, but rather it is an alternative to the mechanic's lien and confers a right of action upon a person who has complied with the statute even though that person has no contract with the owner. These cases are discussed more fully below. On the other hand, two recent Indiana Appellate Court decisions have stated that compliance with Indiana Code Section 32-8-3-9 confers a lien. Therefore the effect or consequence of complying with this statute is currently unclear in Indiana law.

For reasons stated hereafter, this Court will follow the decisions of Indiana's highest Court and therefore finds that compliance with Indiana Code Section 32-8-3-9 does not confer upon Environmental a mechanic's lien of any type.

In *Barker v. Buell*, 35 Ind. 297 (1871) at 302, the Indiana Supreme Court said, regarding Section 649 the predecessor to the current Section:

We are of the opinion that section 649 has no reference whatever to the subject of liens. It does not determine by whom, or under what circumstances, a lien may be acquired, or what steps shall be taken to acquire it. It simply provides for fixing a *personal liability* upon the owner of a building under certain circumstances, and to a certain extent, and for enforcing the same by action. There is no allusion in the section to the subject of liens, but, on the contrary, its entire scope and effect, letter and spirit, are confined to personal liabilities, and the mode of fixing and enforcing them by action. It will be seen that the personal liability that can be fixed upon the owner of a building is less extensive than the lien that can be acquired against the property. The personal liability is limited to the amount that may be due, or may become due from the owner to the employer. Moreover, a party, in order to enforce his lien, must file his complaint therefor within one year from the completion of the work, or the furnishing of materials, or, where a credit is given, from the expiration of the credit (sec. 651), while there is no such limitation to the personal action provided for by section 649.

Inasmuch as section 649 has no application whatever to liens, either in respect to the circumstances under which they may be acquired, or to the manner in which they may be acquired or enforced, it follows that the notice therein provided for to the owner of property, in order to fix a personal liability upon him, is not necessary in order to acquire a lien. Section 650 provides for the notice to be given in order to acquire a lien, and none other is required for that purpose.

In *O'Halloran v. Leachey*, 39 Ind. 150, 152 (1872) the Court said: "The remedy provided by section 649 is purely personal while that provided by section 650 [predecessor to

Indiana Code Section 32–8–3–1 which provides for mechanic's lien on real property] is *in rem*. The one makes the owner personally responsible, while the other creates a lien upon the ground and building." And in *Colter v. Frese*, 45 Ind. 96 (1873) the Indiana Supreme Court said regarding the predecessor to this Section at 99:

Section 649 provides for a personal liability of the owner of a building in favor of any sub-contractor, journeyman, or laborer employed in the construction or repair, or furnishing materials for any building, not to exceed, however, the amount due, or that may become due, from the owner to the employer. This section is confined to the subject of personal liability, and has no relation whatever to liens on property.

In *Crawford v. Crocket*, 55 Ind. 220, 224 (1876) the Court indicated that persons within the scope of the Indiana mechanics' lien statutes could, by compliance with various sections *either obtain a lien on real property or hold the owner personally liable*. They may do one or the other, or both.

In addition to these early cases which stated that the personal liability section was not a lien, the case of *Nash Engineering Co. v. Marcy Realty Corporation*, 222 Ind. 396, 54 N.E.2d 263 (1944) is helpful in a determination of the proper interpretation of the personal liability section. In this case a No-Lien Agreement was contained in the contract which had been recorded in compliance with provisions of the statutes on mechanics' liens. The Court nevertheless enforced the personal liability section of the statutes. This case is sometimes cited for the proposition that the personal liability section creates a lien. However, this Court is convinced, in its reading of this case, that it not only does not say that that section creates a lien, but rather strongly implies that the personal liability section is an alternative to a lien. The Court said, at 269:

Since 1909 the lien section has contained a provision whereby the owner by recording his contract providing against liens may protect himself against the acquisition thereof, and this was done in the instant case. With such provision it would seem to be more essential that persons who like appellants herein would otherwise be entitled to liens should have the additional protection of the personal liability section.

That Court's approach indicates its belief that one section of the mechanics' lien statute provides for a lien, while the other section provides something different from a lien. This reading of the Court's opinion is supported by the fact that the Court acknowledged the existence of a valid no lien agreement in the case, yet enforced the personal liability section without any discussion of the agreement. Surely this indicates that the Court believed the no lien agreement had no application in this case since no lien was being asserted.

Although the statute has been expanded over the years, the language of the personal liability section relevant to the rights provided has remained substantially the same so that the construction given to the words by the cases above continues to be relevant to today's statute. For example in the *Barker* case, *supra*, at 300, in 1871 the personal liability section read as follows:

Sec. 649. Any sub-contractor, journeyman, or laborer employed in the construction or repair, or furnishing materials for any building, may give to the owner thereof, or, if said owner is absent, to his agent in charge of said building or repairs, notice in writing, particularly setting forth the amount of his claim, and services rendered, for which his employer is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount which may be due, and may thereafter become due, from him to the employer, which may be recovered in an action whenever an amount equal to such claim over other claims having priority shall be due from such owner to the employer; and any sub-contractor, by giving notice as above, setting forth the amount of labor or materials he has engaged to perform or furnish in the construction or repair of such building, shall have the same rights and

remedies against said owner for the amount of labor or materials performed or furnished after said notice as are above secured and provided for those who serve notice after the work is performed or materials furnished; and whenever an action is brought against an owner in pursuance of the provisions of this section, all sub-contractors, journeymen and laborers, who have performed labor or furnished materials, and given notices as herein required, may become parties to such action, and, if upon final judgment against such owner the amount recovered and collected shall not be sufficient to pay said claimants in full, the same shall be divided among them *pro rata*.

While today's language, *supra*, has expanded the classes covered and the type of work included the language is otherwise the same.

As pointed out earlier, two Indiana Appellate Court decisions have found that the personal liability section does confer a lien on one who complies. In *Indianapolis P. & L. Co. v. Southeastern Supply Co.*, 146 Ind. App. 554, 257 N.E.2d 722 (1970), the Court of Appeals rejected the contention of the appellant that Indiana Code Section 32–8–3–9 does not involve a mechanic's lien. The appellant had argued that action taken based on the statute was only an attempt to enforce a personal liability against the owner. The Appellate Court's majority said that the attempt to collect based on Indiana Code Section 32–8–3–9 was a foreclosure of a mechanic's lien. However, on this point the Court just stated its position. There was no discussion of the earlier cases nor was a rationale presented. Judge Sullivan, in dissent, thoroughly discussed the cases cited earlier in this opinion and concluded, in a well reasoned dissent, that the section was intended to be an alternative to the mechanic's lien and provided only for a right to an action *in personam* against the owner of the property. In the more recent case of *Zeigler Building Materials, Inc. v. Parkison*, Ind.App., 398 N.E.2d 1330, 1332 (1980), the Court stated that the purpose of Indiana Code Section 32–8–3–9 is to permit a person furnishing services, labor, or mate-

rials to a contractor to acquire a lien upon the accounts receivable of the contractor due from the owner. However, again, there is no rationale offered, no authority cited, nor are the early cases discussed nor distinguished.

This Court is not inclined to follow these two more recent decisions when there is a series of Indiana Supreme Court decisions saying the section does not relate to liens and those cases have not been shown to have been overruled, in error, nor distinguished.

Furthermore, the language of the Indiana Code is rather clear. The personal liability section makes no mention of a lien. It provides only for the right to have a cause of action to hold the owner personally liable. A subcontractor could secure a lien by bringing an action and obtaining a judgment lien. It is true that some courts have interpreted statutes similar to this one as providing a lien on the money in the hands of the owner; however, in all such cases that this Court has reviewed there is specific statutory language not present in the Indiana statute on which such an outcome can be based.

Additionally, Indiana Code Section 32–8–3–1 which provides for obtaining a mechanic's lien against real property contains provisions regarding the priority of this lien vis-a-vis other liens, while Indiana Code Section 32–8–3–9, the personal liability section, contains no such provisions for priority. Also, Section 32–8–3–9 contains no limitation on the duration of the right to hold the owner personally liable, nor are other conditions or limitations present in that statute. Section 32–8–3–1 contains specific provisions for waiving the right to obtain the mechanic's lien, whereas Section 32–8–3–9 not only contains no such provision but is completely silent regarding waiver of the right provided therein. The reason for these differences between Indiana Code Sections 32–8–3–1 and 32–8–3–9 is that Section 32–8–3–1 was intended to provide a lien while Section 32–8–3–9 was not so intended.

It could be argued that (Burns 1980 Replacement) Section 32–8–3–9 in a chapter entitled Real Estate—Liens on Real Estate [Mechanics' and Materialmen's Liens] is evidence that the legislature meant the personal liability section to also be a lien. However, this argument would not be persuasive since (1) the title itself limits liens to liens on real estate, and (2) early cases challenging the constitutionality of this section have decided that the personal liability section is appropriately placed in this chapter because it is germane to and properly connected with the general subject and purpose of the chapter as a whole and thus does not violate Article 4, Section 19 of the Indiana Constitution which at that time required that every act embrace but one subject, and matters properly connected therewith, which subject was to be expressed in the title. *See, Moore-Mansfield Const. Co. v. Indianapolis, etc. R. Co.*, 179 Ind. 356, 101 N.E. 296 (1913); *Halstead v. Olney J. Dean & Co.*, 182 Ind. 446, 105 N.E. 903 (1914).

■ Finally, since a lien for subcontractors and others performing labor or supplying materials under a contract between an owner and a general contractor is an abrogation of the common law, statutes authorizing such a lien are to be read strictly and complied with in detail. *Wiggin v. Gee Co.*, Ind.App., 386 N.E.2d 1218 (1979); *Puritan Eng'r Corp. v. Robinson*, 207 Ind. 58, 191 N.E. 141 (1934). Since the language of Indiana Code Section 32–8–3–9 makes no mention of a lien none should be read into the language without some clear evidence of legislative intent to the contrary.

■ Therefore, the Court finds that by complying with Indiana Code Section 32–8–3–9 Environmental has secured a right of action against the owner, *in personam*, for its claim; however, Environmental has not obtained a lien.

It may be the decisions in *Indianapolis P. & L. Co. v. Southeastern Supply Co., supra,* and *Zeigler Building Materials, Inc. v. Parkison, supra,* represent an attempt by Indiana courts to change the case law treatment of Indiana Code Section 32–8–3–9 to

afford a person who complies with that Section greater assurance of payment. Bankruptcy of the general contractor often is the setting that triggers the need for the protection provided for a subcontractor in Section 32–8–3–9. It would be additional protection for the subcontractor or materialman if he or she had a mechanic's lien on the money in the hands of the owner or upon the accounts receivable of the general contractor in these circumstances. However, this Court will leave any such changes to the judgment of the Indiana Supreme Court and/or the Indiana Legislature.

### The No Lien Agreement

Since the Court has found that Indiana Code Section 32–8–3–9 does not confer a mechanic's lien, the No Lien Agreement, foregoing the right to obtain a mechanic's lien, cannot be a waiver of the right of Environmental to assert a claim against money in the hands of the owner according to Section 32–8–3–9. The No Lien Agreement waived only the right to obtain a mechanic's lien. Since Section 32–8–3–9 does not involve a mechanic's lien, the No Lien Agreement does not apply to rights obtainable under that Section.

■ Case law in Indiana demonstrates that a No Lien Agreement does not waive the right of a subcontractor to give notice of holding the owner personally liable. *Nash Engineering Co. v. Marcy Realty Corporation*, 222 Ind. 396, 54 N.E.2d 263 (1944).

■ Furthermore, even though it is settled law in Indiana that a general contractor who complies with the requirements of Indiana Code Section 32–8–3–1 can effectively waive the right for himself and those who work under him on a contract or provide materials for the contract to obtain a mechanic's lien, such a waiver in a contract between the owner and general contractor, in order to be effective against a subcontractor, must be direct, positive, and express, with any doubt regarding the language of the contract being construed against a waiver. *Kokomo, F. & W. Traction Co. v. Kokomo Trust Co.*, 193 Ind. 219,

137 N.E. 763 (1923); *Baldwin Locomotive Works v. Edward Hines Lumber Co.*, 189 Ind. 189, 125 N.E. 400 (1919); *Clarage v. Palace Theatre Corporation*, 95 Ind.App. 443, 165 N.E. 550 (1929). Generally, courts will accord full force to a waiver of the lien voluntarily made, but they will not extend its operation and effect beyond its plain terms. *See, Goldstein v. McAlonan*, 297 Ill.App. 643, 17 N.E.2d 993 (1938); 57 C.J.S. *Mechanics' Liens* § 222, at 793 (1948).

██ The contract between the owners and the bankrupt in this case specifically waived the right to file a Notice of Intention to Hold a Mechanic's Lien and the right to secure any mechanic's lien *against the real estate, any buildings thereon or improvements* (emphasis added). Clearly Environmental could not have availed itself of Indiana Code Section 32–8–3–1 and thereby filed a Notice of Intention to Hold a Mechanic's Lien. However, just as clearly the language of the contract does not provide for a waiver of the right of a subcontractor to give notice of holding an owner personally liable. Furthermore, even if Indiana Code Section 32–8–3–9 conferred a type of mechanic's lien upon funds in the hands of the owner, in each place in the contract where prohibition against mechanics' liens are covered words of limitation regarding liens against the real estate, buildings, appurtenances, and improvements thereon are consistently used. A prohibition of liens on money of the owner, should such a lien have existed, was not a part of the contract. Therefore the No Lien Agreement in this contract could not have waived the right of Environmental to assert a lien against funds had such a lien been available.

In fact, while apparently the issue has not been directly addressed by Indiana courts, it is clearly arguable that the right given by Indiana Code Section 32–8–3–9 may not be waived by any contract between an owner and a general contractor even if the attempt to do so complies with the conditions required to waive the right to secure a mechanic's lien by filing an Intention to Hold a Mechanic's Lien under Indiana Code Section 32–8–3–1.

The general rule in Indiana that the right to obtain a mechanic's lien can be waived in a contract between the owner and the general contractor has been established only in cases dealing with the lien obtained by filing a Notice of Intention to Hold a Lien against the real property and/or improvements thereon according to provisions of Indiana Code Section 32–8–3–1 which specifically allows for waiver of the right under certain conditions.

██ ·Furthermore there are a number of differences between the lien given pursuant to Indiana Code Section 32–8–3–1 and the right provided for in Indiana Code Section 32–8–3–9. First, the latter section does not provide for a waiver as the former section does. Second, Section 32–8–3–9 applies to any subcontractor, lessor, journeyman, laborer, providing equipment, services or materials. Whereas, Section 32–8–3–1 applies to contractors in addition to the others listed above. Apparently Section 32–8–3–9 was not intended to be available to the general contractor and therefore it should not be open to waiver by the contract between the owner and the general contractor. Third, the purpose of the two sections is quite different. The primary purpose of Section 32–8–3–1 is to protect the contractor and those claiming under him from failure of the *owner* to provide compensation due under the contract. The section rests on the principle that one who furnishes labor or material for the improvement of property is entitled to look to the property for his compensation. *Jackson v. J. A. Franklin & Son*, 197 Ind.App. 38, 23 N.E.2d 23 (1939). A second purpose of Section 32–8–3–1 is to protect real estate from secret liens that could cloud alienability of real estate. Thus strict compliance with the recording provisions is required in order to obtain the lien. *Kendall Lumber & Coal Co. v. Roman*, 120 Ind.App. 368, 91 N.E.2d 187 (1950). Whereas, the primary purpose of Section 32–8–3–9 is to protect the owner and those claiming under the general contractor from failure of the *general contractor* to pay those with a right to payment under the contract.

Viewing the statutory sections as a whole it appears that the legislature, while providing a remedy to contractors and others claiming under them in Section 32–8–3–1, was also concerned about protecting owners from mechanics' liens and protecting the realty from unrecorded liens. The mechanics' liens statutes constitute a balancing of competing interests. The waiver provisions included in Section 32–8–3–1 favor the owner and the alienability of property. However this is balanced by Section 32–8–3–9 which allows one who provided materials, equipment, and/or labor to protect his claim for compensation for improvements made. In Section 32–8–3–9 the owner is protected in that he cannot be liable without specific notice, and upon receipt of notice he has a right to withhold money from the general contractor until the claim is satisfied. The land is protected since the claim does not attach to the realty nor to improvements thereon. Thus Section 32–8–3–9 should be interpreted as favoring the right of one who made improvements to realty. Therefore this right should not be open to waiver by the general contractor. The section should be viewed as an alternative form of protection for those who provide improvements to realty *since their rights under Section 32–8–3–1 can be waived by the general contractor. Nash Engineering Co. v. Marcy Realty Corp., supra*, at 269.

Therefore, for the reasons stated above the Court finds that the No-Lien Agreement between the owners and the bankrupt did not waive Environmental's right to give notice holding the owners personally liable and thereby to secure a claim against money in the hands of the owners.

### *Is Environmental Systems', Inc. Claim On the Funds Superior to Trustee's*

Environmental does not claim to have a mechanic's lien that is superior to trustee's claim. Rather Environmental argues that Indiana Code Section 32–8–3–9 provides that any subcontractor who furnishes the notice requirements of the section to the owner has all the rights, priorities, and remedies as are provided for those who file a "Notice of Intention to Hold a Mechanic's Lien." Since only Environmental complied with Section 32–8–3–9 and since neither the debtor nor the trustee complied with either Indiana Code Section 32–8–3–1 or Section 32–8–3–9, Environmental asserts that rights, priorities and remedies given under the statute make its claim superior to trustee's.

The trustee, assuming that compliance with Indiana Code Section 32–8–3–9 conferred a mechanic's lien upon Environmental, argues that Section 70(c)(3) of the Bankruptcy Act,[6] which gives to the trustee the status of a hypothetical lien creditor, puts the trustee on an equal footing as one who had obtained a mechanic's lien. Being equal to Environmental under the statute, trustee states that since the statute says claimants must share pro rata Environmental is no longer a secured creditor.

As stated above, the Court has found that compliance with Indiana Code Section 32–8–3–9 does not provide Environmental with a mechanic's lien.

Furthermore, the Court disagrees with Environmental's reading of the statute regarding the claim that compliance gives all the rights, priorities and remedies as are provided for those who file a "Notice of Intention to Hold a Mechanic's Lien." The full text of Section 32–8–3–9 is set out above. The only reference to same rights that the Court finds in the statute is that regarding any subcontractor, etc. who gives notice before having done the work. Such a subcontractor, etc. is given the same rights and remedies as those who serve notice *after the labor is performed*. This is not a reference back to Indiana Code Section 32–8–3–1. The language of the statute seems clear on this point:

> And any such subcontractor, equipment lessor leasing equipment, journeyman or laborer, by giving notice as above provided, setting forth the amount of labor he has engaged to perform, or of materials

or machinery he has engaged to furnish, in erecting, altering, repairing or removing of any of the buildings or other structures above described, shall have the same rights and remedies against such owner for the amount of such labor performed, or materials or machinery furnished, after said notice is given, as are above secured and provided, for those who serve notice after the labor is performed or the materials or machinery furnished.

Trustee's argument regarding Section 70(c)(3) of the Bankruptcy Act needs little discussion in light of the Court's finding that Indiana Code Section 32–8–3–9 does not confer a mechanic's lien upon one who complies. However, even if the statute had given Environmental a mechanic's lien, the Court disagrees with the trustee's assertions regarding the effect Section 70(c)(3) would have had in this case.

■ The general rule is that bankruptcy does not bar the enforcement of mechanics' liens. Such liens are not affected by the bankruptcy of the contractor. Furthermore the Bankruptcy Act gave specific protection to mechanics' liens making them valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the debtor's petition in bankruptcy. This is especially clear whenever the lienholder had perfected the statutory lien prior to the filing of the petition in bankruptcy by complying with state statutory requirements. Bankruptcy Act Section 67(b);[7] Collier on Bankruptcy ¶ 67.20 at 209–254 (14th ed. 1978); *Youngstown S. & T. Co. v. Patterson-Emerson-Comstock of Ind.*, 227 F.Supp. 208 (N.D.Ind.1963); *Ricotta v. Burns Coal & Bldg. Supply Co.*, 264 F.2d 749 (2d Cir. 1959); *Mullins v. Noland Co.*, 406 F.Supp. 206, 211 (N.D.Ga.1975).

■ Section 70(c)(3) of the Bankruptcy Act in pertinent part reads:

.... The trustee shall have as of the date of the bankruptcy the rights and powers of: ... (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee.[8]

This section gives the trustee the statuts of an ideal lien creditor who has obtained its lien by *legal or equitable proceedings*. While the Bankruptcy Act assumes that the trustee has provided the notice required as a part of conferring this ideal lien creditor status, the Act does not assume that the trustee complied with requirements to secure a statutory lien nor does it give the trustee the status of a lienholder obtained by statute alone. 4B Collier on Bankruptcy ¶¶ 70.49, 70.52, 70.62 (14th ed. 1978). Thus, while the trustee does obtain ideal lien creditor status as of the date of the filing of the petition in bankruptcy, this status does not bring the trustee within a specific statutory lien unless some other circumstance is present in the case to give the trustee access to the status of an existing statutory creditor. Such circumstances are not present in the case at bar.

■ To determine whether the trustee's status obtained through Section 70(c)(3) (i.e., ideal lien creditor as a result of judicial or equitable proceedings) would defeat a plaintiff with a mechanic's lien we would look to the laws as generally applied in bankruptcy and to the laws of Indiana regarding priorities. A mechanic's lien perfected prior to date of bankruptcy is, generally speaking, superior to the claim of the trustee under Section 70(c)(3). 4B Collier on Bankruptcy ¶ 70.51 at 614 (14th ed. 1978). Environmental in this case would have obtained a mechanic's lien, had one been conferred by statute, prior to the fil-

---

**7.** 11 U.S.C.A. § 107(b) (West Supp. 1979).

**8.** 11 U.S.C.A. § 110(c)(3), *supra.*

ing of the bankrupt's petition. The Indiana Code provides that mechanics' liens shall have priority over all liens suffered or created thereafter, except the liens of other mechanics and materialmen, as to which there shall be no priority. Indiana Code Section 32–8–3–5.[9]

Furthermore, Indiana case law has established that a mechanic's lien is superior to liens obtained after the mechanic's lien. *Kulp v. Chamberlin*, 4 Ind.App. 560, 31 N.E. 376 (1892); *Goodbub v. Hornung's Estate*, 127 Ind. 181, 26 N.E. 770 (1891); *Krotz v. A. R. Beck Lumber Co.*, 34 Ind.App. 577, 73 N.E. 273 (1905); *Stanray Corporation v. Horizon Construction, Inc.*, 168 Ind.App. 164, 342 N.E.2d 645 (1976); *Beneficial Finance Co. v. Wegmiller Bender Lumber Co.*, Ind.App., 403 N.E.2d 1150 (1980).

Therefore trustee's arguments regarding the effect of Section 70(c)(3) of the Bankruptcy Act upon a mechanic's lien, had Environmental obtained one, would not have prevailed.

The remaining question is whether Environmental's statutory claim on money in the hands of the owner is superior to the trustee's claim even though the statute has not provided Environmental with a mechanic's lien.

The Court finds, for the reasons given below, that Environmental's claim is superior to that of the trustee.

There is no doubt that Environmental, by complying with Indiana Code Section 32–8–3–9, can enforce its claim on the funds in the hands of the owner by a separate action against the owner. This Court believes that it would be inequitable and unjust for the owner in this case to have to pay double just on account of the general contractor's bankruptcy. The owners, in their contract with the bankrupt, attempted to protect themselves from all liens by subcontractors through a No Lien Agreement. Furthermore, the owners, in their contract, required that part of the performance of the general contractor was payments of obliga-

tions to subcontractors when they became due. Finally the owners provided in their contract that the general contractor must indemnify the owners for any losses on the part of the owners in order to obtain the release of any lien of a subcontractor. Among these parties who should be made to bear the loss? Should it be the owners who tried in every way to protect themselves from double payments? Or should it be the contractor who has breached his contract by failure to perform in that he did not pay this subcontractor as required under the contract? The subcontractor will not have to bear the loss because he was vigilant in protecting his right to be paid for his labor by giving the owner notice of his intention to hold the owner personally liable before the general contractor filed his petition in bankruptcy.

██ Bankruptcy is a court of equity.[10] As a court of equity, the Bankruptcy Court is charged to apply equitable principles to reach equitable results when administering the Bankruptcy Act. *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Taylor v. Standard Gas & Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939); *In re Westec Corp.*, 449 F.2d 243 (5th Cir. 1971); *In re Leasing Consultants, Inc.*, 592 F.2d 103 (2d Cir. 1979).

This is not to say that a court of bankruptcy should exercise its equitable powers whenever it seeks a special result. A court of equity must review the case as a whole to determine whether equitable principles apply. In this case the Court finds that the equities are with the owners and the subcontractor.

██ Equity aids the vigilant and diligent. *International Harvester Cr. Corp. v. East Coast Truck & R.V. Sales, Inc.*, 387 F.Supp. 820 (S.D.Fla.1975); *Jinks v. Mays*, 464 F.2d 1223 (5th Cir. 1972); *Mishawaka, St. Joseph Loan & Trust Co. v. Neu*, 209 Ind. 433, 196 N.E. 85 (1935); *Roemhild v.*

**9.** Ind.Code Ann. § 32–8–3–5 (Burns 1980).

**10.** 11 U.S.C.A. § 11(a) (West 1966).

*Jones,* 178 F.Supp. 609 (E.D.Ark.1959), *aff'd,* 283 F.2d 70 (8th Cir. 1960). Equity protects one who by superior diligence has obtained a legal advantage. *Klebba v. Struempf,* 224 Mo.App. 193, 23 S.W.2d 205 (1930). Furthermore equity does justice by the whole, not by halves. An action brought in equity draws the whole case into equity. *Jones Drilling Corp. v. Rotman,* 245 Ind. 10, 195 N.E.2d 857 (1964); *Hedworth v. Chapman,* 135 Ind.App. 129, 192 N.E.2d 649 (1963).

The overriding policy of the Indiana Mechanics' Liens Statutes is to protect those who have contributed labor or materials to the construction. *Youngstown S. & T. Co. v. Patterson-Emerson-Comstock of Ind., supra* at 211. Environmental complied with those statutes as fully as it could given the waiver of the right to file an Intention To Hold A Mechanic's Lien. Environmental secured its statutory claim on the money in the hands of the owner prior to any effort by the general contractor or the trustee to do so. The owners, by various provisions in the building contract, attempted to protect themselves from failure of the general contractor to pay subcontractors, and the parties agreed in the contract that the general contractor would indemnify the owners from any loss they suffered as a result of satisfaction paid to release any lien.

When the subcontractor complied with Indiana Code Section 32–8–3–9, the owners then obtained the right to pay the subcontractor directly and to setoff the amount so paid from that amount due to the general contractor. *Bird v. Rector etc. of St. John's Episcopal Church of Elkhart,* 154 Ind. 138, 56 N.E. 129 (1900); *Youngstown S. & T. Co. v. Patterson-Emerson-Comstock of Ind., supra.*

The general contractor breached the building contract between himself and the owners when he failed to pay Environmental as provided in the contract. The general contractor has not fully performed the contract and is therefore subject to setoff in an amount sufficient to allow the owners to satisfy the contractual obligation.

For the reasons given above the Objection To Disallowance of Environmental's claim as a secured claim is denied because that claim is not based upon a mechanic's lien which would give it the status of a secured claim. However, the Court finds that Environmental has the superior right to the funds in the hands of the owners in the amount of its claim as set forth in its notice to hold the owners personally liable. The trustee has a right to any money remaining in the fund of the owners after the satisfaction of Environmental's claim. The trustee states in his brief that he and the owners have settled upon the sum of $4,500.00 regarding the claim of the bankruptcy estate on the building contract and the claim of the owners against the estate, subject to the Court's approval.

Therefore, noting that a hearing will be necessary to determine the exact amount of money that is due from the owners to bankrupt on the contract, and thereafter the amount to be paid to the subcontractor and to the trustee, if any, the Court now schedules such hearing for the 3rd day of JUNE, 1982 at 8:30 o'clock a. m. in the Federal Building, 2nd Floor, 1300 South Harrison Street, Fort Wayne, Indiana. Pursuant to that hearing an order will thereafter be entered directing the owners to pay, from the money held by them, first the claim of the subcontractor and second the contract claim of the bankrupt less the amount paid to the subcontractor to the extent that money remains in the settlement fund. In order to facilitate the purpose of this hearing the Court directs that a representative of the owners, Environmental, and the trustee be present at that hearing. Further the Court directs that the trustee and the owners submit to the Court at that hearing an Application For Court Approval of Stipulated Settlement of Claims reflecting the settlement that has apparently been arrived at by the owners and the trustee.

After entry of the order pursuant to the hearing, set above, the trustee shall have no further claim against the owners for the amount paid to the subcontractor in settlement of its statutory claim. Environmen-

tal, after payment of its claim pursuant to the same order, shall have no further claim in this matter against the owners or against the bankrupt.

SO ORDERED.